SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Beryl Zimmerman v. Sussex County Educational Services Commission**
(A-75-17) (080861)

**Argued January 14, 2019 -- Decided April 30, 2019**

**LaVECCHIA, J., writing for the Court.**

Within New Jersey's education statutes, the Tenure Act provides that tenured teachers shall not be "reduced in compensation." N.J.S.A. 18A:28-5. The legal issue in this appeal is whether tenured teachers who served in a part-time capacity pursuant to negotiated contracts that did not specify a minimum number of guaranteed hours suffered an impermissible reduction in compensation when their hours were reduced.

The Sussex County Educational Services Commission (SCESC) provides special educational services pursuant to Chapter 192, Chapter 193, and the federal Individuals with Disabilities Education Improvement Act (IDEIA) to students in Sussex County enrolled in full-time, non-public schools. The number of hours that SCESC's part-time staff work is subject to the number of students and the needs of those students; both fluctuate from school year to school year. Because of the varying demand for services, part-time teachers are not contractually guaranteed a minimum number of hours.

Two tenured part-time teachers for the SCESC, Judy Comment and Beryl Zimmerman, brought this action. They claimed their tenure rights were violated when, in the 2014-15 school year, their hours were substantially reduced. Moreover, their hours were limited to Chapter 192 instruction, and, pursuant to an SCESC directive, instruction groups required a minimum of three students. Due to the reduction in hours, they received substantially less annual compensation even though their hourly wages increased. They alleged that some of the work went to non-tenured teachers or to teachers with less seniority.

The superintendent of the SCESC asserted that she implemented a directive that Chapter 192 services would no longer be provided in groups of fewer than three students unless requested by the student's child study team. She also asserted that if and when Zimmerman and/or Comment obtain required certifications, they may return to teaching Chapter 193 and IDEIA services. The record is bereft of further explanation of the reasons for the reduction of Comment's or Zimmerman's hours in the 2014-15 school year.

1

In November 2014, Comment and Zimmerman filed verified petitions of appeal with the Commissioner of Education. The Commissioner concluded that the teachers did not have a tenure right to a specified number of hours during the 2014-15 school year. As held by the Commissioner, although the Tenure Act protects tenured teachers from reductions in compensation, unless part-time teachers have a contractually guaranteed minimum number of hours, the mere reduction of hours does not equate to a reduction in compensation. The Commissioner noted that the hourly rate paid to each teacher was not decreased.

The Appellate Division held that the failure to include a minimum number of hours in the contracts did not deprive the teachers of tenure rights. 453 N.J. Super. 464, 469 (App. Div. 2018). The panel determined that "compensation" means more than hourly rate, id. at 476-77, and noted further that, although the teachers here had no right to a guaranteed minimum number of hours, they do have seniority rights, id. at 477. The panel explained how, if it knew the total number of hours available to be allocated among the SCESC teaching staff and the "seniority percentage," it could calculate whether Comment's or Zimmerman's tenure or seniority rights were violated by the assignment of hours to non-tenured or less-senior part-time teachers. Id. at 478-79. However, the record did not permit that assessment and, accordingly, the panel remanded. The Court granted the SCESC's petition for certification. 234 N.J. 121 (2018).

**HELD:** Protection of compensation is not restricted to protection of the hourly rate of pay, and a remand is needed. A record must be created to allow the Commissioner to assess the SCESC's reasons for allocating work among its part-time teachers in a manner that severely reduced the number of hours afforded to the two tenured teachers and awarded work to non-tenured and less senior staff. The Court thus affirms the judgment of the Appellate Division but does not encourage a strict arithmetic calculation along the lines the panel has suggested.

1. N.J.S.A. 18A:28-5 of the Tenure Act provides that tenured teachers "shall not be dismissed or reduced in compensation except for inefficiency, incapacity, or conduct unbecoming such a teaching staff member or other just cause." The Tenure Act is recognized and construed as remedial legislation. Spiewak v. Board of Education of Rutherford explained that the Tenure Act "makes tenure a mandatory term and condition of employment." 90 N.J. 63, 72 (1982). The Spiewak Court declared that part-time supplemental teachers were entitled to the rights and privileges of tenure, "if they meet the specific criteria in N.J.S.A. 18A:28-5." Id. at 84. Further, dismissal of tenured teachers when reducing the workforce shall be made on the basis of "seniority." N.J.S.A. 18A:28-10. The Court has not addressed the meaning of reduction in compensation in any setting resembling the instant matter. (pp. 14-17)

2. The Appellate Division here concluded that protection of compensation is not restricted solely to protection of the hourly rate of pay, and the Court agrees. That

construction is consistent with Spiewak's instruction that tenure rights are not subservient to contractual provisions. Concepts pertinent to the rights of tenured staff, and the seniority that comes with tenure, come into play. The Court has acknowledged the obligation of an employer to honor tenured staff's seniority rights over a non-tenured applicant and has held that a tenured part-time teacher has seniority rights in seeking a full-time position with identical responsibilities within his or her certification. Lichtman v. Bd. of Educ. of Ridgewood, 93 N.J. 362, 364 (1983). (pp. 17-19)

3. Here, the focus is on work being divvied up among tenured and non-tenured part-time teachers, all of whom have the same caveat in their respective contractual provisions -- the amount of hours is dependent on the number and the needs of the SCESC's students. The total amount of work, and the nature of the educational services needed in any given school year, is beyond the SCESC's control. However, the SCESC's position is that its allocation of that work is not subject to review, so long as an individual teacher's respective hourly rate of pay is not reduced. That interpretation would allow an employer to take unreasonable action, such as reducing the tenured teachers' annual hours to nil, effectively creating a dismissal without cause contrary to N.J.S.A. 18A:28-5. An administrative agency, including a school board, is subject to having its decisions or actions reviewed under an arbitrary and capricious standard. If an employer such as the SCESC were to allocate the amount of hours that it has to assign to its certified teaching staff on an arbitrary and capricious basis, those actions remain subject to review and set-aside by the Commissioner of Education, should they be challenged. See N.J.S.A. 18A:6-9. (pp. 19-21)

4. The Court affirms the Appellate Division's decision to remand. A record must be created to allow the Commissioner to assess under the arbitrary and capricious standard the SCESC's reasons for allocating work among its part-time teachers in a manner that severely reduced the number of hours afforded to the two tenured teachers and awarded work to non-tenured and less senior staff. The Court provides guidance as to what that record should contain. The record must identify the considerations that led to the work assignments allocated by the SCESC. That should include a determination of the certification requirements for the assignments, consideration of the geography of assignments and scheduling needs for the schools being serviced, whether unique educational continuity concerns of the students being serviced were involved in allocating assignments, and whether, all things considered, preference was given to tenured staff and senior staff. The Court adds that setting a minimum number of students for groups does not violate the arbitrary and capricious standard. (pp. 21-22)

5. The Court rejects the teachers' asserted expectation of entitlement to the annual salary of their previous year of employment and does not encourage a strict arithmetic calculation along the lines the Appellate Division has suggested. There are legitimate management needs factoring into a just allocation of work. However, a just allocation in this setting must generally favor tenured and more senior staff over non-tenured and less

senior staff.  Finally, the Court urges the creation of a system by which the SCESC and like entities explain how work like this is allocated from year to year and why hours are being reduced.  (pp. 22-23)

**The judgment of the Appellate Division is AFFIRMED AS MODIFIED and the matter is REMANDED to the Commissioner of Education.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion.**

SUPREME COURT OF NEW JERSEY

A-75 September Term 2017

080861

Beryl Zimmerman and
Judy Comment,

Petitioners-Respondents,

v.

Sussex County Educational Services
Commission, Sussex County,

Respondent-Appellant.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
453 N.J. Super. 464 (App. Div. 2018).

| Argued | Decided |
|---|---|
| January 14, 2019 | April 30, 2019 |

Brent Pohlman argued the cause for appellant
(Methfessel & Werbel, attorneys; Brent Pohlman, Boris
Shapiro, and Eric L. Harrison, on the briefs).

Donna Arons, Deputy Attorney General, argued the cause
for respondent New Jersey Commissioner of Education
(Gurbir S. Grewal, Attorney General, attorney; Melissa
Dutton Schaffer, Assistant Attorney General, of counsel,
and Eric Apar, Deputy Attorney General, on the brief).

1

Louis P. Bucceri argued the cause for respondents Beryl Zimmerman and Judy Comment (Bucceri & Pincus, attorneys; Louis P. Bucceri, of counsel and on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

Within New Jersey's education statutes, the Tenure Act provides that tenured teachers shall not be "reduced in compensation." N.J.S.A. 18A:28-5. The legal issue in this appeal is whether tenured teachers who served in a part-time capacity pursuant to negotiated contracts that did not specify a minimum number of guaranteed hours suffered an impermissible reduction in compensation when their hours were reduced.

Two tenured part-time teachers, who provided compensatory and remedial special education services to students through the Sussex County Educational Services Commission (SCESC), initiated this action. The teachers filed a petition of appeal with the Commissioner of Education, claiming their tenure rights were violated when, in the 2014-15 school year, their hours were substantially reduced and, consequently, they received less annual compensation. They alleged that some of the work went to non-tenured teachers or to teachers with less seniority.

The Commissioner held against the teachers, reasoning that their tenure-right protection from a reduction in compensation was not violated because

2

neither teacher's respective hourly rate was reduced nor could either teacher claim any contractually guaranteed minimum number of hours. The Appellate Division reversed that administrative decision, concluding that the Tenure Act protects more than the hourly rate of compensation of part-time teachers in such circumstances. The panel remanded with instructions for the creation of a more complete record concerning the allocation of work assignments in the 2014-15 school year.

We granted the SCESC's petition for certification to consider its argument that, so long as there is no reduction in the hourly rate, when a contract does not guarantee a specified amount of hours, a management reallocation of work that reduces the hours of a part-time teacher does not create an impermissible reduction in compensation under the Tenure Act. For the reasons that follow, we affirm as modified the judgment of the Appellate Division and remand for further proceedings consistent with this opinion.

I.

We derive the following facts from the joint stipulation of facts and accompanying exhibits, except where otherwise noted.

The SCESC provides compensatory and remedial special educational services pursuant to Chapter 192, Chapter 193, and the federal Individuals with Disabilities Education Improvement Act (IDEIA) to students in Sussex

3

County who are enrolled in full-time, non-public elementary and secondary schools.[1]  See N.J.S.A. 18A:6-51 to -70 (establishing the means for boards of education to create an educational services commission).  Chapter 192 services include "compensatory education in Basic Skills" and English as a Second Language (ESL) instruction.  Chapter 193 and IDEIA services consist of remedial special education services.

The number of hours that SCESC's part-time staff work is subject to the number of students and the needs of those students; both fluctuate from school year to school year.  Because of the varying demand for services, part-time teachers are not contractually guaranteed a minimum number of hours.

Judy Comment is a tenured part-time teacher who has an instructional certificate with endorsements as an elementary N-8 teacher, and as a K-12, "Highly Qualified English Teacher."  The SCESC employed her on a part-time basis from the 1997-98 school year to the 2014-15 school year to provide

---

[1]  Chapter 192 services provide "preventive and remedial programs . . . to assist pupils who have academic needs that prevent them from succeeding in regular school programs."  N.J.S.A. 18A:46A-2(e).  Students who are enrolled full-time in non-public elementary and secondary schools are eligible for Chapter 192 instruction.  See N.J.S.A. 18A:46A-1 to -17.  Chapter 193 services provide "remedial services for handicapped children in both public and nonpublic schools."  N.J.S.A. 18A:46-19.1.  The IDEIA, 20 U.S.C. §§ 1400 to 1482, provides federal funds to school districts to provide special education and related services designed to meet the needs of children with disabilities.

Chapter 192, 193, and IDEIA-based instruction at various non-public schools in Sussex County. Her hours fluctuated each year. In her verified petition filed with the Commissioner, Comment states that her approximate hours for previous school years were as follows:

- From 1997-98 through 2010-11, 22-32 hours per week

- 2011-12, 17 hours per week

- 2012-13, 27.5 hours per week

- 2013-14, 29.75 hours per week

In or about September 2014, Comment learned that her schedule would be reduced to about five hours per week. The joint stipulation of facts, filed by the parties with the Commissioner, states that in the 2014-15 school year, Comment was assigned fewer hours per week than in the previous year; her hours were limited to Chapter 192 instruction; and, pursuant to an SCESC directive, instruction groups required a minimum of three students. Her annual income for the 2013-14 school year was $36,838.74. For the 2014-15 school year, her annual income dropped to $10,331.13. The hourly wage paid to her in 2013-14 was $32.98; in 2014-15, her hourly rate of pay rose to $33.79.

Beryl Zimmerman is also a tenured part-time instructor with the SCESC. She has an educational certificate with an endorsement as an elementary school teacher. The SCESC employed Zimmerman continuously on a part-

time basis from the 2002-03 through the 2014-15 school years.  Her hours fluctuated during her years of employment.  Her verified petition states that her hours were approximately as follows:

- 2002-03, 3 hours per week

- 2003-04, 3 hours per week

- From 2004-05 through 2012-13, 29.75 hours per week

- 2013-14, 28 hours per week

The joint stipulation of facts states that prior to 2014-15, Zimmerman provided Chapter 192, 193, and IDEIA-based instruction, but in 2014-15 she was assigned fewer hours than the prior year and her hours were limited to Chapter 192 instruction.  Also, per an SCESC directive, instruction groups required a minimum of three students.  Her income for 2013-14 was $27,668.81, and her income for 2014-15 was $19,603.42.  Her hourly pay for 2013-14 was $28.98 and for 2014-15 was $29.79.

The joint stipulation also reveals that three part-time non-tenured teachers provided Chapter 192 and 193 instruction during the 2014-15 school year.  Two of them also provided IDEIA instruction during the 2014-15 school year.

In a sworn statement, the superintendent of the SCESC, Andrea Romano, provided additional factual assertions not included in the joint stipulation of

6

facts. Prior to the 2014-15 school year, Romano implemented a directive that Chapter 192 services would no longer be provided in groups of fewer than three students unless requested by the classified student's child study team. During the 2013-14 school year, both Zimmerman and Comment had provided instruction in groups of fewer than three students, which had the effect of increasing the number of instructional hours that were provided.

Romano also asserted that Comment and Zimmerman had improperly provided Chapter 193 and IDEIA instruction during the 2013-14 school year because each lacked a "students with disabilities," "teacher of the handicapped," or relevant "Highly Qualified Teacher" certification. In her statement, Romano explained that providing Chapter 193 and IDEIA instruction by teachers lacking proper certification is "noncompliant with state law and the contracts with the local school districts." That said, Romano asserted that SCESC offered Comment, who did possess a "Highly Qualified Teacher" of English certification, the opportunity to teach English to classified students, but Comment declined. Romano contends that, if and when Zimmerman and/or Comment obtain the required certifications, they may return to teaching Chapter 193 and IDEIA services. Notably, Comment and Zimmerman contest Romano's assertion of their certification noncompliance.

The record is bereft of further explanation of the reasons for the reduction of Comment's or Zimmerman's hours in the 2014-15 school year. Thus, the record does not contain any information about: (1) how much of the reduction in the hours assigned to Comment and Zimmerman was due to the elimination of classes with fewer than three students; (2) the justification, if any, for using non-tenured teachers to teach Chapter 192, 193, and IDEIA classes while tenured teachers had their hours reduced; (3) the number of total hours available for all relevant Chapter 192, 193, and IDEIA classes compared with previous years; and (4) any other justification for the decrease in Comment's and Zimmerman's hours and the number of hours by which each of their schedules was reduced due to each justification.

II.

A.

In November 2014, Comment and Zimmerman (hereinafter "the teachers") filed separate verified petitions of appeal with the Commissioner, which were consolidated. See N.J.S.A. 18A:6-9 (vesting the Commissioner with jurisdiction over controversies and disputes arising under the school laws). Each petition alleged that the teacher's tenured status under N.J.S.A. 18A:28-5 and seniority rights under N.J.A.C. 6A:32-5.1 entitled her to maintain her 2013-14 level of employment over non-tenured and less senior teachers.

The Commissioner transferred the matter to the Office of Administrative Law as a contested case. The administrative law judge (ALJ) who was assigned to hear this matter issued an Initial Decision recommending the grant of summary judgment in favor of the SCESC. The ALJ's decision held that for a reduction of a part-time employee's hours to trigger tenure/seniority rights, there must be a guarantee of a minimum number of hours. Because here there was no contractually guaranteed minimum number of hours, the ALJ determined that the SCESC did not violate the tenure or seniority rights of the teachers.

B.

The Commissioner adopted the Initial Decision as her Final Decision, concluding that teachers did not have a tenure right to a specified number of hours during the 2014-15 school year. As held by the Commissioner, although the Tenure Act protects tenured teachers from reductions in compensation, unless part-time teachers have a contractually guaranteed minimum number of hours, the mere reduction of hours does not equate to a reduction in compensation. Importantly, the Commissioner noted that the hourly rate paid to each teacher was not decreased.

C.

In a published opinion, the Appellate Division identified three questions that required resolution: (1) whether the failure to include language in the contracts that guaranteed the teachers a minimum number of hours deprived them of tenure rights; (2) whether the reduction in hours reduced the teachers' compensation; and, (3) whether the reduction in hours triggered the teachers' seniority rights. Zimmerman v. Sussex Cty. Educ. Servs. Comm'n, 453 N.J. Super. 464, 469 (App. Div. 2018). The panel held that the failure to include a minimum number of hours in the contracts did not deprive the teachers of tenure rights. Ibid. The Appellate Division determined that "compensation" means more than hourly rate, id. at 476-77, and noted further that, although the teachers here had no right to a guaranteed minimum number of hours, they do have seniority rights, id. at 477.

The panel explained how, if it knew the total number of hours available to be allocated among the SCESC teaching staff and the "seniority percentage," it could calculate whether Comment's or Zimmerman's tenure or seniority rights were violated by the assignment of hours to non-tenured or less-senior part-time teachers. Id. at 478-79. However, the record did not permit that assessment and, accordingly, the panel remanded for the creation of a record that would permit assessment of the teachers' "seniority percentage

10

as compared to each other and the other part-time teachers" in order to determine whether the decrease in hours violated tenure and seniority rights. Id. at 478.  The Appellate Division decision also invited the Commissioner to use her expertise to create, on remand, an equally viable alternative for computing whether seniority rights were violated, as long as the alternative does not exclusively rely on an hourly rate-of-pay comparison.  Id. at 478-79.

D.

We granted the SCESC's petition for certification.  234 N.J. 121 (2018). The arguments of the parties elaborate on their positions taken before the Appellate Division.

The SCESC argues that, as part-time teachers with no minimum number of hours required by their contract, Comment and Zimmerman are not entitled to a minimum number of hours through tenure or seniority rights.  It argues that "compensation" under the Tenure Act is a contractually negotiated term and, in this case, the compensation was the hourly rate because there was no minimum number of hours.  The SCESC contends that the Appellate Division's "seniority percentage" formula is overly burdensome and does not adequately consider the fluctuating needs of the employee or the fluctuating needs of the schools -- the basis for having part-time teachers without a firm hourly commitment.

11

In a statement in lieu of brief generally supportive of the SCESC, the Commissioner of Education asks that her decision be upheld because it is not arbitrary and capricious, is supported by the record, is consistent with legal precedent, and does not violate legislative policies.

On the other hand, Comment and Zimmerman maintain that any reduction in compensation must comport with the Tenure Act independent of their contractual language. They contend that if "compensation" under the Tenure Act were controlled purely by contract, the entire legislative purpose of the Tenure Act -- to protect teachers against school boards' abuse of bargaining power -- would be undermined. The teachers argue that granting the SCESC the ability to freely reduce hours, without cause, while continuing to employ and hire non-tenured part-time teachers to perform the same function, is a violation of their tenure and seniority rights.

III.

A.

This appeal is from a quasi-judicial decision of an administrative agency. As such, the general standard of review is well-settled. A long line of case law recognizes that an appellate court reviews agency decisions under an arbitrary and capricious standard. In re Stallworth, 208 N.J. 182, 194 (2011) ("In order to reverse an agency's judgment, an appellate court must find the

12

agency's decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" (alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980))); Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963) ("[W]e will not upset a determination by the Commission in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the civil service act.").

However, in this matter, a legal question of statutory construction is involved. The core issue requires an interpretation and application of the word "compensation" within the Tenure Act. In the judicial performance of that statutory construction task, we consider the Commissioner of Education's interpretation but are not bound by it. See Ardan v. Bd. of Review, Lourdes Med. Ctr. of Burlington Cty., Inc., 231 N.J. 589, 604 (2018) ("In an appeal from a final agency decision, an appellate court is 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" (quoting US Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012))). We give deference "to the interpretation of statutory language by the agency charged with the expertise and responsibility to administer the scheme," Acoli v. State Parole Bd., 224 N.J. 213, 229 (2016); however, we will not uphold an

13

unreasonable interpretation, <u>In re Election Law Enf't Comm'n Advisory Op. No. 01-2008</u>, 201 N.J. 254, 260 (2010).

B.

N.J.S.A. 18A:28-5 of the Tenure Act protects the rights of teachers employed in the public schools in the State of New Jersey by providing that tenured teachers "shall not be dismissed or reduced in compensation except for inefficiency, incapacity, or conduct unbecoming such a teaching staff member or other just cause." The Tenure Act, codified in full at N.J.S.A. 18A:28-1 to -18, is recognized and construed as remedial legislation. <u>Spiewak v. Bd. of Educ. of Rutherford</u>, 90 N.J. 63, 74-75 (1982) ("[B]ecause of its remedial purpose, the Tenure Act should be liberally construed to achieve its beneficent ends.").

The issue in <u>Spiewak</u> was whether part-time public school teachers providing remedial and supplementary instruction for many years, albeit on an hourly basis and often without the benefit of a contract, may acquire tenure. <u>Id.</u> at 66-67. The teachers "sought a declaration of their employment status and tenure eligibility, as well as prorated salary and benefits." <u>Id.</u> at 69. The <u>Spiewak</u> decision explained that the Tenure Act "makes tenure a mandatory term and condition of employment. It therefore supersedes contractual terms." <u>Id.</u> at 72. The Court observed that tenure protection "would be greatly reduced

14

if it were subject to contract principles," adding that "[t]enure is not dependent on agreement between the parties. Teachers are entitled to tenure because the Legislature has granted them that right." Id. at 80.

In the end, the Court found irrelevant the source of funding for the positions -- federal Title I funding -- and stated that federal funding did not exclude the teachers from the protections of the Act. Id. at 82. The Spiewak Court declared that part-time supplemental teachers were entitled to the rights and privileges of tenure, "if they meet the specific criteria in N.J.S.A. 18A:28-5." Id. at 84. Although the Spiewak decision resolved the acquisition of tenure by part-time teachers, regardless of the source of funding or fluctuating need for services, it did not examine all the protections that accompany the grant of tenure.

N.J.S.A. 18A:28-5 protects tenured teachers from dismissal or reduction in compensation except for inefficiency, incapacity, conduct unbecoming, or other just cause. Further, dismissal of tenured teachers when reducing the workforce shall be made on the basis of "seniority." N.J.S.A. 18A:28-10 ("Dismissals resulting from any such reduction shall not be made by reason of residence, age, sex, marriage, race, religion or political affiliation but shall be made on the basis of seniority according to standards to be established by the commissioner with the approval of the state board."). The Legislature charged

15

the Commissioner of Education with establishing "standards of seniority" for

tenured teachers:

> The commissioner in establishing such standards shall classify insofar as practicable the fields or categories of administrative, supervisory, teaching or other educational services and the fields or categories of school nursing services which are being performed in the school districts of this state and may, in his discretion, determine seniority upon the basis of years of service and experience within such fields or categories of service as well as in the school system as a whole, or both.
>
> [N.J.S.A. 18A:28-13.]

Our Court has not addressed the meaning of reduction in compensation

in any setting resembling the instant matter. To the extent that the Appellate

Division has addressed related circumstances in published decisions, two

holdings bear noting.

In the setting of the abolishment of a teacher's full-time position in favor

of one of a fraction of a week, the Appellate Division has held that a

"[r]eduction in hours of employment is considered a reduction in force" under

the Tenure Act. Klinger v. Bd. of Educ. of Cranbury Twp., 190 N.J. Super.

354, 357 (App. Div. 1982). There, the Cranbury Board of Education altered

the teaching of its physical education program from two full-time teachers to

two seven-tenths teachers, one man and one woman, who would jointly teach

the physical education classes. Id. at 356. Klinger alleged that he should have

16

been retained as the sole teacher, and be allowed to teach full-time. Ibid. (noting that Klinger argued that "by reason of his tenure and seniority the board was required to retain him in a full-time position rather than employing both him and [the non-tenured female teacher] as part-time teachers"). The panel held that the reduction in hours was a reduction in force, but added that the other seven-tenths non-tenured teacher "received no better treatment than [Klinger, so] his seniority rights were not violated." Id. at 358.

A tenured teacher's seniority rights also were held not to be triggered when a school board abolished a position and assigned the teacher to another area within his certification without reducing salary or other employment benefits of the teacher. Carpenito v. Bd. of Educ. of Rumson, 322 N.J. Super. 522, 528 (App. Div. 1999).

IV.

The Commissioner's decision upholding the action of the SCESC relies on previous Commissioner of Education and school law administrative decisions, affirmed in unpublished appellate decisions, that approached the question of what a reduction in compensation means for part-time teachers on the basis of the contractual terms of the parties. The Commissioner and the SCESC rely on those past decisions, spanning several decades, to assert a broad proposition: so long as the hourly rate of pay is not reduced, if a part-

17

time teacher's contractual agreement with a school employer does not guarantee a minimum amount of hours per week, or presumably, per year, then fluctuation from year-to-year creates no violation of the tenure right to be protected from a reduction in compensation.

The Appellate Division panel was unpersuaded by those earlier administrative law decisions and it found that the language of the Tenure Act failed to support that broadly stated proposition in all circumstances. Rather, the panel concluded that protection of compensation is not restricted solely to protection of the hourly rate of pay. We agree. Like the Appellate Division, we also conclude that construction is consistent with Spiewak's instruction that tenure rights are not subservient to contractual provisions.

Tenure rights, once acquired, may not be contractually restricted. They are statutorily controlled. Thus, concepts pertinent to the rights of tenured staff, and the seniority that comes with tenure, come into play. See N.J.S.A. 18A:28-5 (describing rights and benefits of tenure); N.J.S.A. 18A:28-13 (describing seniority rights).

In particular, this Court has acknowledged the obligation of an employer to recognize and honor tenured staff's seniority rights over a non-tenured applicant. In Lichtman, we held that a tenured part-time teaching staff member has seniority rights in seeking a full-time position within his or her

18

certification and with responsibilities identical to those of the part-time position. Lichtman v. Bd. of Educ. of Ridgewood, 93 N.J. 362, 364 (1983). Following the elimination of her position as a part-time school librarian, the librarian applied for a full-time librarian position, but was rejected in favor of a non-tenured applicant. Id. at 364-65. This Court determined that "regulations governing the award and calculation of seniority do not evince any legislative intent to distinguish between full-time and part-time positions." Id. at 367. A teacher's "seniority accrues from her actual service in the particular position for which she is certified." Id. at 369. When the nature and duties of the full-time position are identical to those of the part-time position, the experience and seniority acquired in the part-time position entitle the teacher to preference over non-tenured applicants. Ibid.

Here, the focus is on work being divvied up among tenured and non-tenured part-time teachers, all of whom have the same caveat in their respective contractual provisions -- the amount of hours is dependent on the number of students of the client-school districts to be served by the SCESC and the needs of those students. There does not appear to be any question that the total amount of work, and the nature of the educational services needed in any given school year, is beyond the SCESC's control. However, the SCESC's position is that its allocation of that work is not subject to review, so

19

long as an individual teacher's respective hourly rate of pay is not reduced. That position was initially accepted by the Commissioner, but it overlooks the Tenure Act's intent to reasonably protect against a reduction in compensation in settings such as these, where the annual work fluctuates.

Taken to an extreme, the argument advanced by the SCESC would permit the effective dismissal of tenured part-time staff in favor of non-tenured hires because the SCESC asserts the ability to effectively reduce the tenured teachers' annual hours to nil, should it so decide. That cannot be permitted under the Tenure Act's prohibitions. In addition to effectively creating a dismissal without cause, contrary to N.J.S.A. 18A:28-5, it allows an employer to take unreasonable action.

An administrative agency, including a school board, is subject to having its decisions or actions reviewed under an arbitrary and capricious standard. See, e.g., Dennery v. Bd. of Educ. of Passaic Cty. Reg'l High Sch. Dist. No. 1, 131 N.J. 626, 641-42 (1993) (applying the arbitrary, capricious, and unreasonable standard of review in evaluating a school board reorganization that led to an alleged violation of tenure rights); see also In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385-86 (2013) (collecting cases to highlight the general applicability of the arbitrary, capricious, and unreasonable standard of review in agency action). If an

20

employer such as the SCESC were to allocate the amount of hours that it has to assign to its certified teaching staff on an arbitrary and capricious basis, those actions remain subject to review and set-aside by the Commissioner of Education, should they be challenged. See N.J.S.A. 18A:6-9.

We are hobbled by the state of the record in this matter and affirm the Appellate Division's decision to remand. A record must be created to allow the Commissioner to assess the SCESC's reasons for allocating work among its part-time teachers in a manner that severely reduced the number of hours afforded to the two tenured teachers and awarded work to non-tenured and less senior staff. See ACLU of N.J. v. Hendricks, 233 N.J. 181, 201 (2018) ("Where the agency record is insufficient, we may order a remand to the agency to more fully develop the record.").

The record must identify the considerations that led to the work assignments allocated by the SCESC. That should include a determination of the certification requirements for the assignments, consideration of the geography of assignments and scheduling needs for the schools being serviced, whether unique educational continuity concerns of the students being serviced were involved in allocating assignments, and whether, all things considered, preference was given to tenured staff and senior staff. We add only that the one educational/management justification that we are aware of in this record --

21

setting a minimum number of students for instructional groups -- does not violate the arbitrary and capricious standard of review and need not be revisited on remand.

In sum, a remand is necessary for a full and proper review of the SCESC's justification for its allocation of work, which directly affected the amount of compensation received by the tenured part-time staff who brought this action. The justification must be reasonable and not arbitrary or capricious, as determined by the Commissioner.

Finally, to the extent that the teachers assert an expectation of entitlement to the annual salary of their previous year of employment, we reject that argument. They are entitled to their employer's reasonable allocation of available work, subject to the considerations identified herein and other like considerations that the Commissioner, in her expertise, may add.

We do not encourage a strict arithmetic calculation along the lines the Appellate Division has suggested. In resting our analysis on the Tenure Act, with its inherent expectation of reasonableness and non-arbitrary or capricious action by an employer that has not guaranteed a minimum amount of hours when dividing up work, we acknowledge that there are legitimate management needs factoring into a just allocation of work. However, a just allocation in this setting must generally favor tenured and more senior staff over non-

22

tenured and less senior staff.  Finally, we urge the creation of a system by which the SCESC and like entities explain how work like this is allocated from year to year and why hours are being reduced.  In the long run, such an explanation would promote transparency and help avoid litigation.

## V.

The judgment of the Appellate Division is affirmed as modified.  The matter is remanded to the Commissioner of Education for further proceedings consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion.