**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1423-23

JASMIL RIVAS,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and NN ACQUISITION, LLC,

     Respondents.

_____

Submitted June 4, 2025 – Decided July 28, 2025

Before Judges Currier and Marczyk.

On appeal from the Board of Review, Department of Labor and Workforce Development, Division of Unemployment Insurance, Docket No. 251936.

Legal Services of New Jersey, attorneys for appellant (Sarah Hymowitz, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent Board of Review (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Gina Labrecque, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff appeals from the Board of Review, Department of Labor's (Board) November 29, 2023 decision: (1) disqualifying plaintiff for regular unemployment benefits under N.J.S.A. 43:21-5(a), because she left work voluntarily without good cause attributable to the work; and (2) finding plaintiff ineligible for Pandemic Unemployment Assistance (PUA) benefits under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), 15 U.S.C. §§ 9001-9141. We affirm.

I.

Plaintiff was employed in the admissions office of Lincoln Technical Institute of New Jersey (Lincoln Tech).[1] For several months at the beginning of the COVID-19 pandemic, Lincoln Tech held classes remotely but resumed in-person instruction in July 2020.

Plaintiff resigned from her position in November 2020, stating in her resignation letter: "I have been part of the Lincoln Tech Team since October 4[], 2016. I've worked with amazing people throughout my time here. It is with heavy heart that I decided to resign, but my mental health and sanity are being

---

[1] The employer on the Board documents and case caption is NN Acquisition, LLC. The record seems to indicate NN Acquisition, LLC owns Lincoln Tech.

affected." Her last day of work was November 19, 2020. Plaintiff applied for unemployment benefits on November 22.

In January 2021, the Deputy of the Division of Unemployment Insurance determined that plaintiff was disqualified from receiving benefits because she left work voluntarily as she felt the work was adversely affecting her health. Plaintiff also did not meet any of the qualifying reasons for PUA benefits under the CARES Act.

Plaintiff filed an appeal on March 19, 2021. The Appeal Tribunal (Tribunal) dismissed plaintiff's appeal as untimely without good cause under N.J.S.A. 43:21-6(b)(1) (appeal must be filed within ten days of the mailing of the determination or within seven days of the receipt of the determination). The Board affirmed and dismissed the appeal.

After plaintiff appealed to this court, the Board moved for a remand to reconsider the timeliness of the appeal. We granted the motion. Thereafter, the Board set aside its prior decision and remanded to the Tribunal for additional testimony regarding the timeliness of plaintiff's appeal.

During the course of several telephonic hearings, plaintiff testified that she was aware of the deadline to file an appeal. However, plaintiff stated her delay in filing was because she was "going through [a] pregnancy miscarriage.

A-1423-23

So [she] . . . didn't tend to the letter in that specific moment . . . [but did] when [she] was mentally . . . able to focus on the unemployment issue." Specifically, plaintiff had two miscarriages, the first in mid-January 2021 and another in late February 2021. She testified this rendered her unable "to take care of [her] regular day to day functioning as [she] had [done] before."

Plaintiff further testified that although she previously stated she was able to work during the time-period from when she filed her initial claim until she filed her appeal, she actually was not able to work until "after the pregnancy miscarriage[s]" when she became more "stable" around March of 2021.

Plaintiff presented the following additional testimony: (1) during the time she was going through the miscarriages and prior to March 2021, she was not "certifying [the required timesheets] for [her] weekly benefits;" (2) she was working with people at Lincoln Tech who tested positive for COVID-19, but were allowed to return to work after a few days, although she had no proof to substantiate this claim; (3) she was not advised by any medical professional that she should leave her job because of concerns about COVID-19; (4) she did not provide Lincoln Tech with any medical documentation that the job caused or aggravated any medical condition; (5) Lincoln Tech had a policy that if someone tested positive for COVID-19 in the building, that person was required to

quarantine for ten to fourteen days and show a negative test result before return, and that everyone would evacuate the building so a cleaning crew could clean the entire building, but those policies were never enforced; (6) she identified another employee who was told by Lincoln Tech to return to work after ten days even though she still had a positive test; (7) her job required her to check whether students returning to the school after testing positive for COVID-19 had a fever; (8) some of the students she interacted with told her that within a few days after they tested positive for COVID-19 they were informed by a Lincoln Tech director to come back to school because the students needed "hands on time" in the classroom; (9) she complained to her supervisor about the COVID-19 conditions but her complaints were never addressed; (10) she left work because her employer failed to adhere to quarantine requirements and she worried she would contract COVID-19 and her pregnancy would be affected; (11) shortly after she left her job, she tested positive for COVID-19 and later had a miscarriage; (12) none of the students she tested had a high temperature or fever, including those who had tested positive for COVID-19; and (13) she believed the students were lying when they filled out forms stating they did not have COVID-19 or symptoms associated with it.

5

On August 2, 2023, the Tribunal found that plaintiff had not established good cause for the late filing of the appeal and, therefore, the Tribunal did not have jurisdiction to rule on its merits. The Tribunal stated

> while the Tribunal is sympathetic to the reasons . . . [plaintiff] did not file the appeal within the limits of N.J.S.A. 43:21-6(b)(l), . . . [plaintiff's] reasons are not considered good cause for filing a late appeal because the fact[s] before the Tribunal show[] that she [was] able to address other aspect[s] of her life during the period before filing the appeal on [March 19, 2021]. As such, the appeal is late without good cause and the Tribunal has no jurisdiction to rule on the merits of the appeal.

The Tribunal dismissed the appeal regarding plaintiff's voluntarily leaving work and her disqualification of benefits from November 15, 2020, as well as plaintiff's ineligibility for PUA benefits through January 21, 2021. However, the Tribunal found it "ha[d] jurisdiction over . . . [plaintiff's] eligibility for . . . [PUA] benefits from [January 24, 2021]" to September 4, 2021 (when the program ended).

The Tribunal found plaintiff was ineligible for PUA benefits during the period from January 24, 2021, through September 4, 2021, as she was not unemployed due to one of the COVID-19 related reasons identified in Section 2102(a)(3)(A)(ii)(I) of the CARES Act. The Tribunal reasoned:

6

[Plaintiff] contends a myriad of reasons why her mental health and sanity were being affected due to the employer not following the [Centers for Disease Control] C[OVID]-19 protocols in the workplace and she was concerned about C[OVID]-19 due to her pregnancy. Here, while the Tribunal is sympathetic to . . . [plaintiff's] contentions as to her concerns about C[OVID]-19, it does not negate the fact that she was not advised by any medical professional to leave her job due to her concerns about C[OVID]-19 at the time she left the job. Although . . . [plaintiff] tested positive for C[OVID]-19 after leaving the job and was negative for C[OVID]-19 prior to the date of the mailing of the determination of the Deputy, the Appeal Tribunal only has jurisdiction over the claimant's eligibility for benefits and [PUA] from [January 24, 2021]. Hence, . . . [plaintiff] is ineligible for . . . [PUA] benefits . . . from [January 24, 2021] through [September 4, 2021], as . . . [plaintiff] was not unemployed due to one of the COVID-19 related reasons identified in Section 2102 (a)(3)(A)(ii)(I) of the CARES Act.

Plaintiff appealed the Tribunal's decision to the Board. On November 29, 2023, the Board modified the Tribunal's decision, finding that plaintiff's stated reasons for filing her appeal late did constitute good cause. The Board reasoned:

Under sworn oath, . . . [plaintiff] testified that she was unable to deal with . . . day to day tasks until she appealed on March 19, 2021[,] due to the nature of her condition. Since this was not within her control, we consider her appeal as late with good cause under N.J.S.A. 43:21-6(b)(1).

Therefore, the Board considered the merits of plaintiff's appeal.

7

The Board found plaintiff was disqualified for regular unemployment benefits as of November 15, 2020, because she left work voluntarily without good cause attributable to the work. The Board cited to Wojcik v Board of Review, 58 N.J. 341, 344 (1971), where the Supreme Court held that an individual must show medical proof that their health condition was attributable to or aggravated by their work. The Board explained:

> In this case, no medical proof showing that . . . [plaintiff's] health condition was directly attributable to the work or was aggravated by the work itself was submitted. This was further supported by . . . [plaintiff's] own testimony that a medical doctor did not advise her to leave the job for her mental health. Additionally, there was no attempt made by . . . [plaintiff] to preserve her employment prior to submitting her resignation in order for the employer to acco[m]modate her. Since . . . [plaintiff] has not met the burden to demonstrate that the working conditions were so abnormal or adversely affected her health, she is disqualified for unemployment benefits as of November 15, 2020 for leaving work voluntarily without good cause attributable to the work under N.J.S.A. 43:21-5(a).

Additionally, the Board found plaintiff was ineligible for PUA benefits from November 22, 2020, through December 5, 2020, and January 3, 2021, through September 4, 2021. The Board determined plaintiff did not satisfy any of the criteria for PUA benefits under Section 2102(a)(3)(A)(ii)(I) of the CARES

A-1423-23

Act. The Board explained that a fear of being exposed to COVID-19 is insufficient to qualify for PUA benefits.

However, the Board found that plaintiff did qualify for PUA benefits from December 6, 2020, through January 2, 2021, as she provided evidence that she tested positive for COVID-19 on December 8, 2020, and negative for the virus on January 1, 2021.

II.

On appeal, plaintiff contends the Board erred in denying her unemployment and the additional PUA benefits.

Our review of quasi-judicial agency determinations is limited. Allstars Auto. Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). We "review[] agency decisions under an arbitrary and capricious standard." Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019). The party challenging the administrative action bears the burden of making that showing. Lavezzi v. State, 219 N.J. 163, 171 (2014).

On appeal, the judicial role in reviewing all administrative actions is generally limited to three inquiries:

(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;

(2) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Allstars Auto. Grp., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

We begin by considering plaintiff's contentions regarding the Board's denial of unemployment benefits. N.J.S.A. 43:21-5(a) provides that an individual is disqualified for benefits "[f]or the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed." "Good cause" means "cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed." Brady v. Bd. of Rev., 152 N.J. 197, 214 (1997). See also N.J.A.C. 12:17-9.1(b) (defining good cause).

If a claimant leaves their job for "good cause attributable to [the] work," they are eligible for benefits, but if the claimant left for personal reasons,

however compelling, they are disqualified under the statute.  Utley v. Bd. of Rev., Dep't of Lab., 194 N.J. 534, 543 (2008) (alteration in original).

Plaintiff's argument that the Board misstated some facts is unavailing.  In plaintiff's letter to Lincoln Tech providing two weeks' notice of her decision to leave her job, she stated she was doing so because her "mental health and sanity [we]re being affected."  There is no mention of any concerns regarding Lincoln Tech's handling of COVID-19 in its workplace.  She did not provide any documentation or testimony that a medical professional advised her to leave her job.  Instead, it appears she left for personal reasons.

As plaintiff has not met her burden in showing that the Board's decision was arbitrary or capricious or that its determination was unsupported by sufficient credible evidence in the record, we discern no reason to overturn its decision regarding unemployment benefits.

We turn then to plaintiff's assertion that she was entitled to additional PUA benefits than awarded.

"The CARES Act expanded eligibility, under the PUA program, for payment of benefits for certain categories of individuals."  Sullivan v. Bd. of Rev., Dep't of Lab., 471 N.J. Super. 147, 153 (App. Div. 2022).

A "covered individual" is defined under the CARES Act, in pertinent part, as an individual who:

(i) is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under. . . [15 U.S.C. § 9025], including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under . . . [15 U.S.C. § 9025];

(ii) provides self-certification that the individual—

(I) is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because—

(aa) the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;

(bb) a member of the individual's household has been diagnosed with COVID-19;

(cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19;

(dd) a child or other person in the household for which the individual has primary caregiving

12

responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;

(ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;

(ii) the individual has to quit his or her job as a direct result of COVID-19;

(jj) the individual's place of employment is closed as a direct

13

result of the COVID-19 public health emergency; or

(kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section . . . .

[15 U.S.C. § 9021(a)(3)(A).]

Plaintiff has not presented any evidence to support qualification for benefits under the Act other than her positive COVID-19 test in December 2020, that occurred several weeks after she left work. In its November 2023 decision, the Board found plaintiff was eligible for PUA benefits from the date of her positive test to the date of her negative test—December 6, 2020 to January 2, 2021. Prior to the positive test and after the negative test, plaintiff did not fall within any of the enumerated statutory categories as her decision to stop working was not one of the COVID-19 related reasons delineated under the CARES Act. Her fear of being exposed to COVID-19 does not qualify her for PUA benefits. The record supports the Board's determination that plaintiff was ineligible for CARES Act benefits other than the delineated dates. Therefore, the Board's decision was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1423-23