# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1689-23

O.S.,[1]

     Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT OF
HUMAN SERVICES, DIVISION
OF FAMILY DEVELOPMENT,

     Respondent-Respondent.

_____

Argued October 29, 2025 – Decided January 9, 2026

Before Judges Currier and Berdote Byrne.

On appeal from the New Jersey Department of Human Services, Division of Family Development, Case ID C121012006.

O.S., appellant, argued the cause on appellant's behalf.

Laura N. Morson, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Laura N. Morson, on the brief).

---

[1] We use initials to protect petitioner's privacy. R. 1:38-3(f)(4).

PER CURIAM

Petitioner O.S. applied for emergency assistance (EA) under N.J.A.C. 10:90-6.3(a)(1), seeking temporary rental assistance through the Cumberland County Board of Social Services (Board). After receiving information pertaining to O.S.'s extensive mental health history, the Board determined that a boarding home or residential healthcare facility would be the most appropriate temporary housing and offered O.S. those options. After O.S. refused the offer, the Board formally denied O.S.'s application for EA, based on her refusal to accept the proposed placement, which was supported by clinical recommendations and documentation. The New Jersey Department of Human Services (Agency) upheld the Board's decision. We affirm.

On appeal, O.S. contends that boarding homes and residential health care facilities are not appropriate or permissible forms of housing assistance under the EA statutory and regulatory framework delineated under N.J.A.C. 10:90-6.3(a)(1). O.S. argues that because the regulations omit the terms "boarding homes" and "residential healthcare facilities," these options are excluded for EA applicants.

We "review[] agency decisions under an arbitrary and capricious standard." Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465,

475 (2019). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).

"Emergency assistance shall be made available through the [Work First New Jersey (WFNJ)] program as a supportive service to meet the emergent needs of WFNJ recipients, so that recipients shall not be prevented from complying with the work requirement due to disruptions caused by homelessness and related emergencies." N.J.A.C. 10:90-6.1(a). Essentially, the program serves as a social safety net, designed to provide adequate housing for those in dire need.

N.J.A.C. 10:90-6.3(a) states that

> [t]he county or municipal agency is authorized to provide the following kinds of assistance to meet emergency situations when there is no other source of support available: payment for emergency shelter and emergency temporary housing . . . .
>
> The county/municipal agency shall determine the most appropriate form of emergency housing which is required to address the need and authorize payment of the costs of adequate emergency shelter/housing, taking into consideration individual/family circumstances and services provided. Such emergency housing shall

include placement in shelters; hotel/motel placement; transitional housing; or shelters for victims of domestic violence.

[(Emphasis added).]

"Transitional housing" is defined as being

temporary housing that: includes, but is not limited to, single-room occupancy housing or shared living and supportive living arrangements; provides access to on-site or off-site supportive services for very low-income households who have recently been homeless or lack stable housing; is licensed by the department; and allows households to remain for a minimum of six months.

[N.J.S.A. 52:27D-304 (emphasis added).]

The issue before us is whether the Agency was unreasonable in upholding the Board's decision offering O.S. a boarding home and residential health care facility as transitional housing. We discern the proffer of housing options was appropriate under the circumstances and permitted under the applicable statutes and regulations.

A "[b]oarding house" is defined as being

any building, together with any related structure, accessory building, any land appurtenant thereto, and any part thereof, which contains two or more units of dwelling space arranged or intended for single room occupancy, exclusive of any such unit occupied by an owner or operator, and wherein personal or financial services are provided to the residents, including any

4

residential hotel or congregate living arrangement, but excluding any hotel, motel, or established guest house wherein a minimum of [eighty-five] percent of the units of dwelling space are offered for limited tenure only . . . where the primary purpose of the occupancy is to provide charitable assistance to the guests and where the owner derives no income from the occupancy.

[N.J.S.A. 55:13B-3(a).]

A "residential health care facility" is defined as a facility "not located with, and operated by, a licensed health care facility that provides food, shelter, supervised health care and related services, in a homelike setting, to four or more persons [eighteen] years of age or older who are unrelated to the owner or administrator." N.J.A.C. 5:27A-1.3(3).

After O.S. appealed the Board's decision to the Office of Administrative Law, the Administrative Law Judge held a hearing with testimony from O.S. and a social worker and noted "The Board processed . . . [O.S.]'s application as an emergent request and reviewed her extensive medical and treatment history, together with her records from the [Project for Assistance in the Transition from Homelessness]." The Board "determined that the most appropriate temporary housing . . . should be: 1. A boarding home that provided three meals per day, partial day programs, and medical benefits as needed; or 2. A residential healthcare facility also with food service and day programs but with medical

5

staff located on the premises." The ALJ found that O.S.'s "reasoning for rejecting those options and continuing to live in her boyfriend's automobile . . . [were] unconvincing and unsound." Therefore, the ALJ affirmed the Board's decision.

The Agency independently reviewed the record and the ALJ's decision and adopted the findings of fact and conclusions of law. The Agency cited to N.J.A.C. 10:90-6.3(a)(1) as its authority to determine the appropriate form of housing to address O.S.'s needs, "which may include an assisted boarding home or a residential facility." The Agency stated that if O.S. again refused Agency offered housing, she may be found ineligible for the receipt of EA benefits for a period of six months under N.J.A.C. 10:90-6.1(c)(3).

O.S. has not provided evidence to demonstrate the Agency acted unreasonably, arbitrarily, or capriciously in upholding the Board's decision to deny EA benefits after O.S. rejected the temporary housing options. A plain reading of N.J.S.A. 52:27D-304 suggests that "transitional housing" encompasses both residential health care facilities and boarding homes as defined by their respective statutes and regulations.

After reviewing O.S.'s extensive well-documented history of mental health diagnoses and issues, the Board acted within its discretion under N.J.A.C.

10:90-6.3(a)(1) and determined that a boarding home or residential health facility were the most appropriate temporary housing options for O.S. Therefore, the Agency acted reasonably in upholding the Board's denial of O.S.'s EA application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-1689-23