**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3562-17T2

N.S.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and ATLANTIC
COUNTY BOARD OF
SOCIAL SERVICES,

     Respondents-Respondents.

_____

Argued telephonically May 29, 2019 – Decided July 3, 2019

Before Judges Sabatino and Mitterhoff.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Cari-Ann R. Levine argued the cause for appellant (Cowart Dizzia LLP, attorneys for appellant; Lycette Nelson, on the brief).

Jacqueline R. D'Alessandro, Deputy Attorney General, argued the cause for respondent Division of Medical

Assistance and Health Services (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, on the brief).

PER CURIAM

Petitioner N.S.[1] appeals the final agency decision of the New Jersey Division of Medical Assistance and Health Services ("the Division") denying his application for Medicaid benefits. The Division found that N.S. failed to timely provide verifications and documents needed to make an eligibility determination. The Division also determined that N.S. was not entitled to a spousal waiver under 42 U.S.C. § 1396r-5(c)(3). For the reasons that follow, we reverse and remand with direction that the agency process N.S.'s application and determine his eligibility for benefits.

## I.

## A.

On May 24, 2016, N.S., through his authorized representative, L.P., submitted an application for Medicaid benefits to the Atlantic County Medicaid Long Term Care Unit ("the CWA").[2] At that time, N.S. was eighty-seven years

---

[1] N.S.'s daughter and legal guardian, L.P., applied for benefits on behalf of N.S.

[2] A county welfare agency determines Medicaid eligibility. N.J.S.A. 30:4D-7a; N.J.A.C. 10:71-2.2(a).

old residing in long-term nursing care at Hammonton Center for Rehabilitation and Healthcare ("Hammonton Center"). Prior to his admission to Hammonton Center in August 2015, N.S. resided with his wife, D.S. At the time of N.S.'s application, D.S. was eighty-six years old.

On the same date the application was submitted, the CWA sent L.P. a written notification that additional documentation was required in order to process the application, including information concerning N.S.'s life insurance, bank statements, and marriage certificate. The CWA also requested information regarding D.S.'s income and resources, social security number, and date of birth.

On June 13, 2016, L.P., on behalf of N.S., appointed Jannell Thomas, the Medicaid coordinator for Hammonton Center, as an authorized representative of N.S. On June 14, 2016, L.P. provided the CWA with some of N.S.'s bank statements, N.S.'s marriage license, and D.S.'s social security number and date of birth. L.P. also informed the CWA that N.S. did not have a life insurance policy and that N.S. paid $900 rent to lease an apartment, but the lease was not in his name. L.P. noted in her correspondence that she "was unable to obtain any additional information from [D.S.]."

On June 21, 2016, a CWA caseworker requested additional documentation, including N.S.'s bank statements from February to June of 2016,

and a close out statement and transaction history for N.S.'s certificate of deposit ("CD"), and N.S.'s rental lease. The caseworker also requested quarterly bank statements for all of N.S.'s accounts for the past five years and information regarding N.S.'s income.

On July 21, 2016. L.P. emailed the caseworker cancelled checks and bills for transactions L.P. had made with money from N.S.'s accounts. L.P. noted she was still trying to obtain a transaction image for a December 2014 deposit in question, as well as the lease. The caseworker responded the next day, again requesting information regarding D.S.'s income and resources.

On July 27, 2016, L.P. emailed the caseworker and notified her that the bank would not provide a transaction image for the December 2014 deposit because the account was in N.S.'s name. L.P. informed the caseworker that D.S. could not locate a copy of the lease, but provided the landlord's contact information. L.P. also disclosed that N.S. was self-employed for many years, but "stopped working due to poor health a few years ago." L.P. noted that N.S. purchased a van for his business in 2012. L.P. had paid the insurance on the van after her father had stopped working so that it could remain parked on the street.

On July 28, 2018, the CWA caseworker responded to L.P, requesting information regarding N.S.'s 2016 income and resources and any business

4

accounts for N.S.'s business. On August 2, 2016, the CWA sent a letter to L.P. requesting: (1) the date on which N.S.'s business closed, and if it closed within the previous five years, documents regarding the business; (2) D.S.'s income and resource documents; and (3) a transaction image for the December 2014 deposit. The letter informed that these documents must be provided within ten days or N.S.'s application would be dismissed.

On August 4, 2016, L.P. emailed the caseworker and informed her that N.S. did not have a business account. On August 5, 2016, L.P. provided a copy of N.S.'s lease. On August 8, 2016, the caseworker emailed L.P. again asking if N.S. had any business accounts and requesting D.S.'s income and resource information.

L.P. replied via email the same day and indicated that N.S. had been self-employed as a paper wall-scraper, but had not worked during the previous five years due to his age and other health issues. L.P. reiterated: "[N.S.] does not have any bank accounts, nor does he have a business bank account. I have presented you all of his banking information. I can provide you with a signed statement from me if needed." L.P. also indicated that the bank had agreed to release the transaction image for the December 2014 deposit and attached

"verification."[3] Finally, L.P. requested an extension to obtain any outstanding documentation.

On August 10, 2016, Hammonton Center's attorney sent a letter to the CWA requesting that N.S.'s application be processed without regard to D.S.'s income and resource information. The letter stated that "42 U.S.C. § 1396r-5, known as the 'spousal refusal provision,' prohibits the denial of Medicaid coverage to individuals whose spouses refuse to cooperate with the state." The letter provided that L.P. had been unable to obtain D.S.'s information through no fault of her own, and that Jannell Thomas had sent three letters requesting financial information to D.S. in June and July 2016, but that the letters were returned as unclaimed. The letter also argued that "[a]ny denial of [N.S.]'s application because of his spouse's refusal to provide information would . . . cause an undue hardship on [N.S.]" under 42 U.S.C. § 1396r-5(c)(3).

After receiving the correspondence from Hammonton Center, the CWA caseworker replied via email to L.P. According to the caseworker, it "d[id] not matter how many attempt[s] [Jannell Thomas] made to get information from

---

[3] The attachment is not contained in the appellate record. It is unclear whether the transaction image was attached to the email. On August 29 and 31, 2016, the caseworker emailed L.P. again requesting a transaction image for the December 2014 deposit, as well as N.S.'s bank statements from June 22, 2016 to present.

[D.S.], it does not count. I have to send her notice." The caseworker also stated that the application could not be processed without D.S.'s income and resource information. In addition, the caseworker requested documentation confirming that N.S.'s business was not active.

After L.P. provided D.S.'s address, the CWA sent three notices directly to D.S. requesting the needed information on August 15, 22, and 29, 2016. D.S. did not respond to any of these requests. On August 31, 2016, the CWA sent L.P. a letter advising that the application could not be processed without D.S.'s information because N.S. and D.S. were legally married and had been living together before N.S. was admitted to Hammonton Center. The letter provided that the application would be closed if D.S.'s information was not provided by September 9, 2016. The letter did not address N.S.'s previous request for a spousal waiver based on D.S.'s failure to cooperate.

On September 9, 2016, Hammonton Center's attorney sent the CWA another letter requesting a spousal waiver under 42 U.S.C. § 1396r-5 and that the application be processed without regard to D.S.'s resources. On the same date, the CWA sent written notice to L.P. that N.S.'s application had been denied for failure to provide necessary documentation.

D.S. died on October 2, 2016. N.S. died on November 30, 2016.

A-3562-17T2

B.

L.P. timely requested a fair hearing on N.S.'s behalf. A fair hearing was held on December 5, 2017 before an administrative law judge ("ALJ") in the Office of Administrative Law.

Barbara Paugh, the assistant administrator and supervisor of the Medicaid unit, testified first for the CWA. Paugh testified that at the time of the denial of N.S.'s application, information regarding the following items was outstanding: (1) N.S.'s business accounts or business tax returns; (2) N.S.'s work van; (3) the distribution of funds from N.S.'s CD; and (4) D.S.'s income and resources. Paugh stated that the CWA required images of all checks for all bank accounts, and that N.S. did not provide images for all transactions in question.

Paugh also testified that it was not necessary to forward L.P.'s request for a spousal waiver to the Division because the spouses were living together prior to N.S.'s admission to Hammonton Center and there was no history of spousal abuse. Paugh noted that the CWA generally requires three failed attempts to contact an uncooperative spouse before it transmits a spousal waiver request to the Division.

Jannell Thomas testified for N.S. Thomas testified that she was aware L.P. was having difficulty retrieving D.S.'s information and recommended that

L.P. submit a request a spousal waiver to the CWA. Thomas, who had previously worked for the CWA, sent three letters via certified mail to N.S. because she believed such documentation was necessary to receive a spousal waiver.

L.P. testified primarily via an affidavit because she has a voice disability, but supplemented her affidavit with some live testimony and cross-examination. L.P. testified that she is not close with D.S. because D.S. is L.P.'s step-mother. After submitting the application. L.P. visited D.S. two times at D.S.'s home to request her information and documentation. D.S. provided some information initially, but became upset when pressed for more documents. D.S. told L.P. to stop asking for the information because it was causing her stress. L.P. explained that D.S. "wasn't well [out of microphone range] in a wheelchair. And she had a husband who was in a nursing home and it was causing her stress." L.P.'s husband also visited D.S. to request information, but D.S. asked them stop pressuring her because it was making her sick.

L.P. also testified that she was appointed as N.S.'s guardian in January 2016. The ALJ requested that L.P. supplement the record with her complaint for guardianship.

On January 19, 2018, the ALJ issued an initial decision affirming the CWA's denial of benefits. The ALJ found that the CWA properly denied N.S.'s application for benefits because, as testified to by Paugh, L.P. failed to provide all the information requested by the CWA. The ALJ noted that L.P. provided an affidavit of N.S.'s assets in support of the guardianship complaint, which identified N.S.'s bank account, CD, and vehicle. The ALJ reasoned that as N.S.'s guardian, L.P. could obtain the outstanding documentation requested by the CWA. For these reasons, the ALJ found that "[e]ven if D.S.'s income and resources were excluded, petitioner failed to produce his own information."

The ALJ also rejected N.S.'s argument that the CWA acted arbitrarily and capaciously in failing to process the requests for a spousal waiver. The ALJ found that there was no evidence in the record that there was a break in marital ties or that D.S. was suffering from any illness which prevented her from providing the requested information. Overall, the ALJ found that there were no "exceptional circumstances" excusing the failure to submit the necessary verifications or warranting an extension of time to provide the outstanding documents.

On March 1, 2018, the Division adopted the ALJ's initial decision. The Division noted that is does waive the spousal resource assessment for an undue

hardship pursuant to 42 U.S.C. § 1396r-5(c)(3) "in certain circumstances where there has been a break in the marital ties and the community spouse refuses to cooperate with the eligibility determination."  The Division found, however, that N.S.'s request for a spousal waiver was properly denied because "[t]here is no evidence in the record to support a finding that there was a break in marital ties between [N.S.] and his wife.  Nor is there evidence to support that either [N.S.] or his family was not in contact with his wife."

## II.

On appeal, N.S. contends that DMAHS misapplied 42 U.S.C. § 1396r-5(c)(3)(A) by failing to accept N.S.'s assignment of support to the State in his Medicaid application as a basis for a spousal waiver.  N.S. also contends that DMAHS misapplied 42 U.S.C. § 1396r-5(c)(3)(C).  He argues that the agency's estrangement requirement for a spousal waiver based on an undue hardship is overly restrictive, and that a spousal waiver should be granted when the community spouse is uncooperative because of his or her own health and age. Finally, N.S. argues that the Division's decision was arbitrary and capricious in upholding the CWA's refusal to forward the requests for a spousal waiver to the Division.

The Division responds that 42 U.S.C. § 1396r-5(c)(3)(A) is inapplicable because N.S. was never deemed eligible for Medicaid benefits and therefore had not yet made a valid assignment of his rights. In addition, the Division argues that an undue hardship waiver was inappropriate under 42 U.S.C. § 1396r-5(c)(3)(C) because no illness prevented D.S.'s cooperation, the spouses were not estranged, and they lived together prior to N.S.'s admission to Hammonton Center. The Division posits that accepting N.S.'s arguments "would allow any spouse to refuse to cooperate and have their income and resource information excluded from the institutionalized spouse's eligibility determination."

A.

We review a final agency decision to determine whether the decision was arbitrary, capricious or unreasonable. E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 348 (App. Div. 2010). "The burden of demonstrating the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." Id. at 349 (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)). We consider:

> (1) whether the agency action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings upon which the agency based application of legislative policies; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred

12

by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors.

[H.K. v. Div. of Med. Assistance & Health Servs., 379 N.J. Super. 321, 327 (App. Div. 2005) (quoting Public Serv. Elec. v. N.J. Dep't of Envtl. Prot., 101 N.J. 95, 103 (1985)).]

See also Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 589 (1988) (noting that the "sense of 'wrongness' [necessary to overturn an administrative decision] can arise in numerous way—from manifest lack of inherently credible evidence to support the finding, obvious overlooking or underevaluation of crucial evidence, a clearly unjust result, and many others." (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

In conducting this review, we "defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." K.K. v. Div. of Med. Assistance & Health Servs., 453 N.J. Super. 157, 160 (App. Div. 2018) (quoting In re Virtua-W. Jersey Hosp.Voorhees for Certificate of Need, 194 N.J. 413, 422 (2008)). In general, "[w]e give deference 'to the interpretation of statutory language by the agency charged with the expertise and responsibility to administer the scheme[.]'" Zimmerman v. Sussex Cty. Educ. Servs. Comm'n, 237 N.J. 465, 475-76 (2019) (quoting Acoli v. State Parole Bd., 224 N.J. 213, 229 (2016)). Nonetheless, we are "in no way bound

by the agency's interpretation of a statute or its determination of a strictly legal issue." Univ. Cottage Club of Princeton New Jersey Corp. v. New Jersey Dep't of Envtl. Prot., 191 N.J. 38, 48 (2007) (quoting In re Taylor, 158 N.J. 644, 658 (1999)).

B.

"Medicaid is a federally-created, state-implemented program that provides 'medical assistance to the poor at the expense of the public.'" In re Estate of Brown, 448 N.J. Super. 252, 256 (App. Div. 2017) (quoting Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004)); see 42 U.S.C. § 1396-1. "Although a state is not required to participate, once it has been accepted into the Medicaid program it must comply with the federal Medicaid statutes and regulations." Ibid. (citing Harris v. McRae, 448 U.S. 297, 301 (1980)).

In New Jersey, the Medicaid program is administered by the Division pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5. Through its regulations, the Division establishes "policy and procedures for the application process." N.J.A.C. 10:71-2.2(b).

Local county welfare agencies evaluate Medicaid eligibility. N.J.S.A. 30:4D-7a; N.J.A.C. 10:71-1.5, 2.2(c). An applicant must establish "eligibility .

14

. . in relation to each legal requirement to provide a valid basis for granting or denying medical assistance." N.J.A.C. 10:71-3.1. "The CWA exercises direct responsibility in the application process to . . . [a]ssist the applicants in exploring their eligibility for assistance." N.J.A.C. 10:71-2.2(c)(3). Similarly, an applicant shall "[a]ssist the CWA in securing evidence that corroborates his or her statements." N.J.A.C. 10:71-2.2(e)(2). The CWA "review[s] . . . the application for completeness, consistency, and reasonableness." N.J.A.C. 10:71-2.9.

"[T]o be financially eligible [for benefits], the applicant must meet both income and resource standards." Brown, 448 N.J. Super. at 257 (citing N.J.S.A. 10:71-3.15). Specifically, "[t]he regulations governing an individual's eligibility for Medicaid reimbursement of nursing home costs provide that in order for an individual to participate in the Medicaid Only Program, the value of that individual's resources may not exceed $2,000." H.K. v. State, 184 N.J. 367, 380 (2005) (footnote omitted) (citing N.J.A.C. 10:71-4.5(c)). To determine eligibility, the agency evaluates the available assets both of the "institutionalized spouse" and the "community spouse" during a five-year "look back" period. N.J.A.C. 10:71-4.8; N.J.A.C. 10:71-4.10(b)(9); see also 42 U.S.C. § 1396r-5(c)(1)(A).

## C.

With this background in mind, we turn to questions presented in this appeal. Having carefully reviewed the administrative record and the relevant statutory provisions, we reverse the final agency decision because the Division's denial of a spousal waiver for an undue hardship was arbitrary and capricious.[4]

Initially, we agree with N.S. that the Division employed an overly narrow construction of an "undue hardship" in relying solely on the fact that N.S. and D.S. were living together and were not estranged prior to N.S.'s admission to Hammonton Center. 42 U.S.C. § 1396r-5(c)(3)(C) provides: "The institutionalized spouse shall not be ineligible by reason of resources determined . . . to be available for the cost of care where . . . the State determines that denial of eligibility would work an undue hardship." The statute does define "undue hardship."

Although we accord deference to the Division's interpretation of the Medicaid Act, we find it significant that the Division cites no authority, or even informal guidance, expressing the requirement that spouses be estranged in order to receive a spousal waiver for an undue hardship under 42 U.S.C. § 1396r-

---

[4] Having determined that N.S. should be entitled to a spousal waiver for an undue hardship, we need not address N.S.'s remaining arguments for reversal.

5(c)(3)(C). While "[d]eference to an agency decision is particularly appropriate where interpretation of the [a]gency's own regulation is in issue[,]" I.L. v. N.J. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006), the Division has not promulgated regulations interpreting the spousal waiver requirements in 42 U.S.C. § 1396r-5(c)(3)(C).[5] Ultimately, we are not bound by the Division's interpretation and "we will not uphold an unreasonable interpretation[.]" Zimmerman, 237 N.J. at 476.

Under the distinctive facts of this case, we conclude that the Division's interpretation is arbitrary, capricious, and unreasonable. In concluding that N.S. was not entitled to a spousal waiver based on undue hardship, the Division and the ALJ disregarded unrebutted evidence in the record that: (1) D.S. was eighty-six years old and had asked L.P. to stop requesting information because it was causing her stress; (2) D.S. did not respond to six letters requesting information, both from the CWA and from Jannell Thomas; (3) the CWA's usual policy was

---

[5] The Division also does not cite any informal written guidance it has issued regarding the spousal waiver requirements. See E.B. v. Div. of Med. Assistance & Health Servs., 431 N.J. Super. 183, 206 (App. Div. 2013). An agency, however, may not offer an interpretation through informal means and must engage in formal rulemaking when its interpretation constitutes an "administrative rule." See Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 331-32 (1984) (providing factors to consider in assessing whether an agency action is an administrative rule).

to forward a spousal waiver request to the Division after three unsuccessful attempts to obtain information from the spouse; (4) L.P. was appointed as N.S.'s guardian because N.S. could not manage his own affairs; and (5) L.P. did not have a close relationship with her stepmother. The Division ignored all this evidence that would support a finding of undue hardship, instead placing inordinate weight on the fact that the spouses were not estranged prior to N.S.'s admission to Hammonton Center. See Trantino v. New Jersey State Parole Bd., 166 N.J. 113, 189 (2001) (reversing the Parole Board's decision based upon "the Board's selective and arbitrary reliance on only those portions of the record that could possibly support the Board's conclusion."). A determination of undue hardship should be a fact-sensitive inquiry taking into account the totality of the circumstances.

We also find no indication in the record that N.S. was intentionally refusing to cooperate with the CWA so that her resources would be excluded from the eligibility determination. To the contrary, L.P.'s testimony reflected that N.S.'s refusal to cooperate stemmed from her stress that her husband was in a nursing home and that L.P. was pressuring her to provide documents. N.S.'s contention that D.S.'s age and health prevented her from complying with the requests for documents is further supported by the fact that N.S. passed away

only months after N.S. submitted his application for benefits. In these ways, we find the Division's policy argument to be misplaced on the facts of this case.

For these reasons, we conclude that the Division's denial of N.S.'s request for a spousal waiver was arbitrary and capricious. In applying 42 U.S.C. § 1396r-5(c)(3)(C) to the facts of this case, "the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors." H.K., 379 N.J. Super. at 327 (quoting Public Serv. Elec., 101 N.J. 95 at 103). Accordingly, we hold that N.S. is entitled to a spousal waiver for an undue hardship pursuant to 42 U.S.C. § 1396r-5(c)(3)(C) and remand to the agency to determine N.S.'s eligibility for Medicaid benefits without regard to D.S's resources.

We also conclude that the ALJ's findings, adopted by the Division, that there were outstanding items regarding N.S.'s business and assets, are not supported by substantial evidence in the record. As detailed above, L.P. corresponded extensively with the CWA caseworker in attempting to accommodate the various requests for information and documents. Although the ALJ implicitly credited Paugh's testimony regarding the information that was outstanding, her testimony was belied by documentary evidence in the record.

Paugh testified that information regarding N.S.'s work van was needed, but L.P. had provided information regarding the van in an email to the caseworker on July 27, 2016. None of the CWA's subsequent correspondence with L.P., including the notices of outstanding documents sent on August 10 and 31, 2016, requested further information about the work van. Similarly, Paugh testified that L.P. did not provide information regarding business accounts or business tax returns, but L.P. notified the caseworker on August 8 that N.S. did not have a business account and had not worked during the five-year look back period. The CWA's August 31, 2016 notice did not request further information about N.S.'s business. Based on the documentary evidence in the record of L.P.'s communications with the caseworker, we conclude that the ALJ's finding that L.P. failed to provide information requested by the CWA about the N.S.'s work van and business is clearly mistaken and not supported by substantial evidence in the record. See Campbell v. New Jersey Racing Comm'n, 169 N.J. 579, 587-88 (2001) (providing that an appellate court may overturn an agency's fact finding where it "is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction." (quoting Clowes, 109 N.J. at 588)).

We similarly conclude that the record lacks support for the ALJ's finding that L.P. failed to provide information regarding the distribution of N.S.'s C.D. and images of checks for bank accounts. The CWA's August 2, 2016 letter requested a transaction image for a December 2014 deposit, but did not request any other images for checks or transactions or any other information regarding the distribution of funds from the CD. On August 8, 2016, L.P. notified the caseworker that the bank had agreed to release this transaction image and attached "verification." As noted above, the record is ultimately unclear as to whether L.P. provided the transaction image for the 2014 deposit, but the CWA did not request this transaction image in the final notice it provided to L.P. on August 31, 2016 before denying N.S.'s application for benefits. Likewise, the CWA's August 31, 2016 letter did not request any other transactions images or information about the distribution of funds from CD. Ultimately, the record reveals that the CWA's multiple requests for information were not consistent and failed to conclusively specify what documentation was needed.

For these reasons, we hold that the ALJ's finding that "[e]ven if D.S.'s income and resources were excluded, petitioner failed to produce his own information" is not supported by substantial evidence in the record. Therefore,

21

we direct the agency to process N.S.'s application for benefits based upon the information and documents already submitted.

In summary, we reverse the Division's final agency decision and remand with direction that the agency timely process N.S.'s application and determine his eligibility for benefits without regard to D.S.'s income and resources.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3562-17T2