**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1958-18

IN THE MATTER OF THE
REVOCATION OF THE
PERMIT FOR DIRECT
ACCESS TO ROUTE 206
FOR BLOCK 2501, LOT 39,
HAMPTON TOWNSHIP,
SUSSEX COUNTY.

_____

Argued April 6, 2022 – Decided July 5, 2022

Before Judges Whipple, Geiger, and Susswein.

On appeal from the New Jersey Department of Transportation.

Sylvia Zika, appellant, argued the cause pro se.

David M. Kahler, Deputy Attorney General, argued the cause for respondent New Jersey Department of Transportation (Matthew J. Platkin, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; David M. Kahler, on the brief).

PER CURIAM

Plaintiff, Sylvia Zika, appeals from the November 21, 2018 final agency decision by the Commissioner of the Department of Transportation (DOT) revoking access to her property on Route 206 in Hampton Township via a driveway that DOT determined to be unsafe.[1] The matter was heard as a contested case by an Administrative Law Judge (ALJ). After lengthy discovery proceedings and a two-day evidentiary hearing, on August 23, 2018, the ALJ issued a twenty-eight page initial decision upholding the DOT's determination that the driveway no longer complied with DOT safety requirements. After reviewing the ALJ's initial decision and exceptions taken by both parties, the Commissioner adopted the ALJ's findings of fact and conclusions of law. The Commissioner concluded that plaintiff's original driveway had safety violations and that alternative access provided by an easement, on adjacent property owned by Lowe's Cos., Inc., was reasonable. Plaintiff raises numerous contentions, including that the final agency decision is arbitrary and capricious. After carefully reviewing the record in light of the arguments of the parties and the governing legal principles, we affirm substantially for the reasons set forth in both the ALJ's initial decision and the Commissioner's final agency decision.

---

[1] We heard oral argument in this appeal back-to-back with Zika v. Lowe's Cos., Inc., No. A-961-18. Both appeals arise from a dispute concerning the driveway.

A-1958-18

I.

We presume the parties are familiar with the pertinent facts and lengthy procedural history, which need only be briefly summarized in this opinion. We discern from the record the following sequence of relevant events.

Plaintiff owns commercial property in Hampton Township that is used for her dental practice. The driveway on her property, providing access to and from State Highway Route 206, has been in use for approximately seventy-five years. In June 2001, DOT determined that the left turn from the intersection of Northbound Route 206 and Cherry Lane into plaintiff's driveway was consistent with protocols at other locations in the vicinity and that no action was required.

Lowe's purchased property on Hampton House Road and applied to Hampton Township (Township) for site plan approval to build a home improvement warehouse store. DOT issued a permit to Lowe's to construct a driveway known as Town Center Drive that provided access from the Lowe's warehouse store to Route 206. The Township's approval of Lowe's' site plan required closure of plaintiff's driveway.

On October 31, 2008, counsel for Lowe's contacted plaintiff seeking access to ten feet of her property to construct a driveway connecting her property to Town Center Drive. After negotiations, on November 20, 2008, plaintiff and Lowe's signed an agreement detailing the terms of the new driveway.[2] The agreement provided: plaintiff would grant access to Lowe's to ten feet of her property to construct a connection from her property to Town Center Drive; Lowe's would clear all brush and overgrown trees to provide a clear line-of-sight of plaintiff's property; Lowe's would remove plaintiff's original driveway; Lowe's would grant plaintiff a perpetual easement for a right-of-way across defendant's property; Lowe's was responsible for all costs associated with constructing the new driveway and removing the old driveway; Lowe's would pay plaintiff $4,000; plaintiff could place two signs on the area of the easement; Lowe's would install "conduit pipe as designated on the attached plan with pull string;" and plaintiff was responsible for designing, constructing and obtaining all permits for the signs.

In August 2013, a driveway closure plan for plaintiff's driveway was submitted to and accepted by DOT. On September 23, 2014, DOT initiated

_____

[2] A dispute between plaintiff and Lowe's concerning this agreement is addressed in the back-to-back appeal, Zika v. Lowe's Companies, Inc., No. A-961-18.

revocation procedures for plaintiff's driveway and provided an access plan whereby plaintiff would have access to her property via Town Center Drive. On April 7, 2015, and June 30, 2015, DOT representatives met with plaintiff to discuss the revocation of her driveway access. On September 9, 2015, plaintiff was informed by letter that DOT was revoking her driveway access because her existing driveway violated N.J.A.C. 16:47-1.1 to -14.1, the New Jersey State Highway Access Management Code (the Code). Specifically, DOT maintained that her existing driveway violated N.J.A.C. 16:47-3.5(e)(6), ("access located along the full width of an exclusive left turn lane") and N.J.A.C. 16:47-3.8(k)(3) ("corner clearance less than 100 feet to a signalized intersection"). The DOT letter advised that plaintiff would be provided access to Route 206 via Town Center Drive.

Plaintiff administratively appealed DOT's determination to revoke access to her existing driveway. As we have noted, the matter was handled as a contested case and was transferred to the Office of Administrative Law (OAL), resulting in the ALJ's initial decision and, ultimately, the affirmance of the initial decision by the Commissioner as a final agency decision. This appeal followed.

Plaintiff raises the following contentions for our consideration:

POINT I

DOT'S REVOCATION OF ACCESS DOES NOT COMPORT WITH LAW, AND THEREFORE, IS ARBITRARY, CAPRICIOUS AND UNREASONABLE.

A.    THE ACCESS DOES NOT VIOLATE N.J.A.C. 16:47-3.8(K)(3).

B.    THE ACCESS DOES NOT VIOLATE N.J.A.C. 16:47-3.5(E)(6).

C.    REVOCATION OF ALL DIRECT PUBLIC ACCESS TO A LOT DOES NOT COMPLY WITH NEW JERSEY MUNICIPAL LAND USE LAW [(MLUL)], N.J.S.A. 40:55D-35, AND THEREFORE, MUST BE DENIED.

D.    "LAND USE AND TRANSPORTATION ARE INEXTRICABLY LINKED."

E.    REVOCATION OF ALL DIRECT PUBLIC ACCESS TO A LOT DOES NOT COMPLY WITH THE NEW JERSEY HIGHWAY ACCESS MANAGEMENT ACT, N.J.S.A. 27:7-89 TO -98.

F.    SYLVIA'S DRIVEWAY HAS NO VIOLATIONS.

POINT II

THE FINAL AGENCY DECISION MUST BE REVERSED BECAUSE THE ALTERNATIVE ACCESS IS NOT REASONABLE.

A.    DOT'S PROPOSED ALTERNATE ACCESS DOES NOT COMPORT WITH MLUL, N.J.S.A. 40:55D-35.

6                                          A-1958-18

B.    DOT FAILED TO CONSIDER SAFETY IMPLICATIONS OF THE PROPOSED ALTERNATIVE ACCESS ON SYLVIA AND PATIENTS.

C.    THE ALTERNATE ACCESS CHANGES THE LEGAL STATUS OF THE PROPERTY SO AS TO RESTRICT THE RIGHT TO USE, ENJOY AND IMPROVE ONE'S PROPERTY.

POINT III

APPELLANT DID NOT RECEIVE A HEARING IN ACCORDANCE WITH DUE PROCESS REQUIREMENTS.

A.    TIMING OF NOTICE.

B.    APPLICATION OF THE ELDRIDGE BALANCING TEST.

POINT IV

THE TAKING OF ALL DIRECT PUBLIC ACCESS FROM AN ABUTTING PROPERTY TO AND FROM A STATE HIGHWAY FOR THE ENTIRE EXTENT OF THE FRONTAGE OR COMMON BOUNDARY IS TAKEN BY EMINENT DOMAIN AND IS COMPENSABLE WHEN THE PROPOSED ALTERNATIVE ACCESS HAS NO FRONTAGE ON A PUBLIC STREET.

A.    LAWS GOVERNING RIGHTS OF PROPERTY OWNERS ABUTTING PUBLIC STREETS AND COMPENSATION FOR INJURY TO ONE'S ACCESS TO PROPERTY ARE FIRMLY ESTABLISHED.

POINT V

THE ADMINISTRATIVE HEARING DID NOT COMPORT WITH DUE PROCESS OF LAW UNDER THE NEW JERSEY CONSTITUTION AND THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION AND THE ADMINISTRATIVE CODE.

A.  AN IMPARTIAL HEARING OFFICER.

    1.  THE JUDGE ERRED WHEN HE REFUSED TO MAKE A COMPLETE RECORD.

    2.  THE JUDGE INTENTIONALLY LIED ABOUT THE LAW TO DECEIVE SYLVIA.

    3.  THERE ARE INCONSISTENCIES BETWEEN STATEMENTS MADE BY THE ADMINISTRATIVE LAW JUDGE AND HIS ACTUAL RULINGS.

    4.  PROCEDURAL DUE PROCESS PROTECTIONS ARE MEANT TO GIVE ONE A FAIR AND FULL HEARING.

B.  OPPORTUNITY TO SUBMIT EVIDENCE

    1.  SUPPRESSION OF EVIDENCE FAVORABLE TO SLYVIA VIOLATES DUE PROCESS OF LAW.

    2.  BASIC CRITERIA USED TO ESTABLISH WHETHER DUE PROCESS IS SATISFIED IS WHETHER THE

8

PROCEDURE WAS HISTORICALLY REQUIRED IN LIKE CIRCUMSTANCES.

C.  OPPORTUNITY TO CROSS-EXAMINE ADVERSE WITNESSES.

1.  DOT FAILED TO GIVE SYLVIA TIMELY EXPERT TESTIMONY OF DOT'S CHANGED GROUNDS FOR REVOCATION AT THE HEARING.

2.  SYLVIA WAS STOPPED FROM CROSS-EXAMINING DOT'S WITNESSES.

D.  OPPORTUNITY TO CALL WITNESSES.

## II.

Because we affirm substantially for the reasons explained in the ALJ's thorough initial decision and the Commissioner's written final agency decision, we need not address defendant's contentions at length. We first consider plaintiff's multi-faceted argument that the final agency decision should be reversed because it was arbitrary and capricious. We begin our analysis by acknowledging the legal principles governing this appeal, including the limited scope of our review.

Our review of a final agency decision is deferential, and we are mindful of the Commissioner's expertise in matters relating to the safety requirements pertaining to access to and from highways. Appellate courts will only reverse

9

an agency decision that is arbitrary, capricious, or unreasonable, or was not supported by the evidence in the record. Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019). An agency action is arbitrary, capricious, or unreasonable if it violates the law, if the record does not contain substantial evidence to support it, or if the agency conclusion could not reasonably have been reached on a showing of the relevant factors. In re Carter, 191 N.J. 474, 482–83 (2007) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).

Turning to the substantive legal principles relevant to the present dispute, the Act provides, in relevant part:

> a. The purpose of the State highway system is to serve as a network of principal arterial routes for the safe and efficient movement of people and goods in the major travel corridors of the State.
>
> b. The existing State highways which comprise the State highway system were constructed at great public expense and constitute irreplaceable public assets.
>
> c. The State has a public trust responsibility to manage and maintain effectively each highway within the State highway system to preserve its functional integrity and public purpose for the present and future generations.
>
> d. Land development activities and unrestricted access to State highways can impair the purpose of the State highway system and damage the public investment in that system.

A-1958-18

e. Underline Every owner of property which abuts a public road has a right of reasonable access to the general system of streets and highways in the State, but not to a particular means of access. The right of access is subject to regulation for the purpose of protecting the public health, safety and welfare.

f. Governmental entities through regulation may not eliminate all access to the general system of streets and highways without providing just compensation.

g. The access rights of an owner of property abutting a State highway must be held subordinate to the public's right and interest in a safe and efficient highway.

h. It is desirable for the Department of Transportation to establish through regulation a system of access management which will protect the functional integrity of the State highway system and the public investment in that system.

i. Areas characterized by extensive commercial activity oriented toward and dependent upon a State highway should not be classified by reason of that level of activity as urban environments for access management purposes, and where an area is also characterized by excessive driveway openings, excessive traffic congestion, excessive accident rates, or undesirably low average rates of speed the Department of Transportation should manage the State highway within the area to mitigate these nuisances.

[N.J.S.A. 27:7-90 (emphases added).]

N.J.S.A. 27:7-91(c) requires DOT to establish in the code standards for

11

(1) The geometric design of driveways and of intersections and interchanges with other streets and highways, (2) the desirability of constructing driveways and interchanges with grade separations, and (3) minimum and desirable spacing of driveways and intersections and interchanges.

N.J.S.A. 27:7-94(a) authorizes the Commissioner to revoke a property owner's driveway access, but only when alternative access is available. Before revoking driveway access, the Commissioner must provide ninety days' notice as well as a plan for the alternative access. N.J.S.A. 27:7-94(b). Under the statutory framework, alternative access "exist[s] if the property owner enjoys reasonable access to the general system of streets and highways in the State . . . ." N.J.S.A. 27:7-94(c), and, in the case of

> property zoned or used for commercial purposes, access onto any parallel or perpendicular street, highway, easement, service road or common driveway, which is of sufficient design to support commercial traffic to the business or use, and is so situated that motorists will have a convenient, direct, and well-marked means of both reaching the business or use and returning to the highway . . . .

> [N.J.S.A. 27:7-94(c)(1) (emphases added).]

Accordingly, N.J.S.A. 27:7-94(c) "establish[es] two criteria for reasonable access" to commercial property. In re Revocation of Access of Block No. 613, Lots No. 4 & 5, Twp. of Toms River, 224 N.J. 53, 67 (2016). "First,

there must be direct access to a street, highway, or service road" and "if improvements alter the route that patrons must take to gain access to the commercial property, the new route must be able to 'support the traffic to the business' and must be convenient, direct, and well-marked." Ibid. Where such access is provided, DOT satisfies its obligation to provide reasonable alternative access under the Act. Ibid. The purpose of N.J.S.A. 27:7-94(c) "is to [e]nsure that a property owner is being treated fairly and equitably, and is not being deprived of reasonable use of [his or her] property, when the DOT determines to close an existing access point because it does not comply with current requirements." In re Revocation of Access of Block No. 1901, Lot No. 1, Borough of Paramus, Bergen Cnty. Parkway 17 Assocs., 324 N.J. Super. 322, 332 (App. Div. 1999).

We note that effective July 16, 2018, the Code was repealed, and new rules were adopted. 50 N.J.R. 11(a) (Jan. 2, 2018); 50 N.J.R. 1534(b) (July 16, 2018). Although the ALJ's initial decision of August 23, 2018, and the final agency decision dated November 21, 2018, were issued after the rule change became effective, both decisions cite to the regulations that existed prior to July 16, 2018, and not to the new regulations. For example, the final agency decision relied upon N.J.A.C. 16:47-3.8(k)(3), which provided:

The corner clearance shall be measured between the end of the curb return of the intersecting street and the beginning of the curb return or beginning of the depressed curb for the driveway . . . . The distance shall be as follows:

. . . .

3. A minimum of 100 feet (30.5 meters) for all driveways in the vicinity of signalized intersections and locations not covered in (k)1 and 2 above.

The final agency decision also relied on N.J.A.C. 16:47-3.5(e)(6), which provided, "[n]o access point shall be located along an acceleration, deceleration, or exclusive right-turn or left-turn lane where the lane is at its full width." Those were the provisions in effect when DOT made its determination to revoke plaintiff's driveway access.

After N.J.A.C. 16:47-3.8(k)(3) and N.J.A.C. 16:47-3.5(e)(6) were repealed, the substance of those provisions was generally reallocated to the appendices. For example, Appendix K explains how to measure corner clearance. 50 N.J.R. 11(a). Appendix E, Table E-1, pertains to the distance between a driveway and an intersection. 50 N.J.R. 15434(b). Appendix D, D-2(b)(3) provides that no driveway should be located along an acceleration, deceleration, or exclusive right-turn or left-turn lane where the lane is at its full width. 50 N.J.R. 15434(b). We add that certain terms relevant to this appeal

14

were amended to simplify language. For example, the term "driveway" replaced the phrases "direct access" or "access point." 50 N.J.R. 11(a).

To avoid confusion, we refer in this opinion to N.J.A.C. 16:47-3.8(k)(3) and N.J.A.C. 16:47-3.5(e)(6) because they were in effect when DOT made its original determination about plaintiff's driveway and because the final agency decision and initial decision cite to those regulatory provisions. However, for other provisions of the code, we refer to the current regulations.

Relevant to this appeal, N.J.A.C. 16:47-11.1(a) currently provides:

> The [DOT] may adjust, modify, or remove a driveway based upon maximum achievement of the goals and purposes of this chapter, if it determines that compliance with this chapter is not reasonably attainable or would leave the lot or site without reasonable access to the general system of streets and State highways as a result of the project. An adjustment, modification, or removal of access will allow continuation of the existing use on the lot or site.

With these statutory and regulatory provisions as a backdrop, we turn to plaintiff's specific arguments as to why the final agency decision in this matter is arbitrary and capricious. As we have noted, plaintiff presents numerous arguments to show that the Commissioner's decision was arbitrary, capricious, and unreasonable. We limit our discussion to those specific contentions that, in our view, merit comment in this opinion.

15

Plaintiff contends that the Commissioner erred in concluding that her driveway violated N.J.A.C. 16:47-3.8(k)(3) because it is opposite, not adjacent to, Cherry Lane. As we have noted, prior to the rule change, N.J.A.C. 16:47-3.8(k)(3) provided that a commercial driveway must have corner clearance

> between the end of the curb return of the intersecting street and the beginning of the curb return or beginning of the depressed curb for the driveway

> . . . .

> [and] [a] minimum of 100 feet (30.5 meters) for all driveways in the vicinity of signalized intersections.

That regulatory provision makes no mention as to whether it pertains to property opposite or adjacent to the intersecting streets. Rather, the provision requires 100 feet of clearance "for all driveways in the vicinity of signalized intersections." The ALJ and Commissioner found that plaintiff's driveway did not have the proper clearance. We are satisfied that the record supports that finding. Thus, we agree with the ALJ and Commissioner that plaintiff's driveway violated N.J.A.C. 16:47-3.8(k)(3).

Plaintiff also contends the Commissioner erred in referring to Town Center Drive as a public street rather than as a private driveway. In this specific context, we deem the distinction to be irrelevant. The critical issue is whether Town Center Drive provides reasonable alternative access for plaintiff to Route

16

206 via an easement as contemplated in N.J.S.A. 27:7-94(c)(1). We are satisfied that Town Center Drive does provide reasonable access to plaintiff's property.

Plaintiff further argues that the Code is aimed solely at preserving public safety of the State's roads and highways and that, in this instance, no public benefit—only a private one—is achieved by revoking her driveway access. We disagree. The record supports the Commissioner's finding that plaintiff's driveway presented a safety hazard because it was less than 100 feet from a signalized intersection. The DOT's interest in public safety extends to plaintiff and the patients who visit her dental practice. In short, the Commissioner determined that plaintiff's driveway made access from her commercial property to and from Route 206 unsafe. Correcting that situation is a matter of public safety and thus serves a public benefit.

We acknowledge plaintiff's argument that her driveway was in place for seventy-five years and had no violations. We also acknowledge that the record shows that DOT constructed the exclusive left turn lane in front of her property twenty-five years ago. We nonetheless reject plaintiff's contention that it is unreasonable for DOT to now claim the left turn lane creates a safety violation. The Act and the Code allow for the Commissioner to address changing circumstances and to revoke a driveway that has become unsafe. See N.J.S.A.

27:7-90; N.J.S.A. 27:7-94(a); N.J.A.C. 16:47-11.1. The Act and the Code recognize that land development, especially in commercial districts, can render previously acceptable conditions unsafe. Under the statutory and regulatory framework, the Commissioner is charged with managing those situations on an ongoing basis. See In re Revocation of Access of Block No. 1901, 324 N.J. Super. at 332 (recognizing DOT's authority to close an existing access point "because it does not comply with current requirements"). We conclude that in this instance, the record supports the Commissioner's revocation of plaintiff's driveway for safety reasons, notwithstanding that the same safety violation did not exist historically.

Relatedly, plaintiff argues the Act and the Code both contain a "grandfather clause" that permits her to retain her original driveway. She relies upon Paul Kimball Hosp., Inc. v. Brick Twp. Hosp., Inc., 86 N.J. 429, 440 (1981), which states that "[g]randfather clauses operate to exempt from the requirements of legislative enactments certain defined individuals or entities that, at the time the requirements become effective, meet specific defined criteria." She also cites City of Linden, Cnty. of Union v. Benedict Motel Corp., 370 N.J. Super. 372, 382 (App. Div. 2004), to support her argument that her driveway access should not be revoked because it existed prior to July 1, 1976.

Plaintiff's reliance on these cases is misplaced. In actuality, the ALJ and the Commissioner found that plaintiff's driveway access permit was, in fact, grandfathered. However, N.J.A.C. 16:47-11.4 provides:

> (a) For removal of all ingress to a lot or site from a State highway or all egress from a lot or site to a State highway, <u>the existing permit or grandfathered permit will be revised</u> to reflect the removal of ingress or egress and the attached plan will show any non-State highway access. An administrative permit will be issued.
>
> (b) After removal of all State highway access and establishment of the alternative access, <u>the existing or grandfathered permit will be revoked</u>. An administrative permit will be issued reflecting the non-State highway access and indicating that no access will be allowed on the State highway.
>
> [(emphases added).]

Thus, while plaintiff is correct that there is a provision for grandfathered driveway permits, those permits may be revoked if, as happened here, DOT determines there is a necessity to do so and provides alternative access. Accordingly, the record supports the Commissioner's finding that even though plaintiff's driveway permit was grandfathered, it should be revoked for a safety violation given that reasonable alternative access was provided.

In sum, we conclude that the decision of DOT was not arbitrary or capricious and was supported by evidence in the record.

A-1958-18

## III.

We next address plaintiff's contention that the Commissioner erred in finding that the alternative access to her commercial property was reasonable. We need not repeat our analysis and conclusions from the preceding section of this opinion. We add that plaintiff argues the Commissioner failed to consider safety aspects of the proposed alternative access because her dental patients will now have to make a left turn across three lanes of traffic in order to enter Town Center Drive. The record shows, however, that the Commissioner assessed the safety aspects of the signalized intersection onto Town Center Drive and determined the proposed alternative access was appropriate.

Under the statutory framework, N.J.S.A. 27:7-94(c), reasonable alternative access to commercial property exists if there is "direct access to a street, highway, or service road" and, if "improvements alter the route that patrons must take to gain access to the commercial property, the new route [is] able to 'support the traffic to the business' and [is] convenient, direct, and well-marked." In re Revocation of Access of Block No. 613, 224 N.J. at 67. The fact that drivers making a left turn are required to cross three lanes of traffic at a signalized intersection does not, in and of itself, make the roadway unsafe. We defer to the Commissioner's expertise in such matters.

20

IV.

Plaintiff contends that her due process rights were violated because she did not receive notice DOT would revoke her driveway access. The record belies that assertion.

The Fourteenth Amendment to the United States Constitution provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The New Jersey Constitution guarantees that all persons "have certain natural and unalienable rights" including the fundamental right of "acquiring, possessing, and protecting property." N.J. Const. art. I, ¶ 1. Substantive due process claims are recognized under the New Jersey Constitution. State in the Interest of C.K., 233 N.J. 44, 73 (2018). Our courts employ the same standard as applied under the federal constitution. Roman Check Cashing, Inc. v. N.J. Dep't of Banking & Ins., 169 N.J. 105, 110 (2001). In analyzing due process violations, New Jersey courts consider "the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." Greenberg v. Kimmelman, 99 N.J. 552, 567 (1985). "The minimum requirements of due process . . . are notice and the opportunity to be heard." N.J. Div. of Child Prot. & Permanency v. J.R.-R., 248 N.J. 353, 369 (2021) (quoting Jamgochian v. State

Parole Bd., 196 N.J. 222, 240 (2008)). The Commissioner must provide ninety days' notice before a property owner's access is revoked as well as a plan for alternative access. N.J.S.A. 27:7-94(b).

The record shows that on September 23, 2014, DOT notified plaintiff it would provide alternate access from her property to Route 206 and would revoke her original driveway access because of safety violations pursuant to the Code. On September 9, 2015, DOT notified plaintiff it would not reconsider its plan to revoke her driveway access and grant her access via Town Center Drive.

We agree with the Commissioner that plaintiff received adequate notice, enabling her to challenge the DOT's revocation. Indeed, the ensuing litigation, including this appeal, demonstrates that she has been afforded an opportunity to challenge the DOT's decision to revoke access to her commercial property via the original driveway.

V.

We turn next to plaintiff's argument that DOT took her property by eminent domain without providing just compensation. The United States Constitution "provides that property shall not 'be taken for public use, without just compensation.'" State ex rel. Comm'r of Transp. v. Marlton Plaza Assocs., 426 N.J. Super. 337, 351 (App. Div. 2012) (citing Lingle v. Chevron U.S.A.

Inc., 544 U.S. 528, 536 (2005)). A taking occurs when government permanently physically invades a property and when it completely deprives an owner of all economically beneficial use of the property. Id. at 353; see Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2071 (2021).

Closure of driveway access is not considered a taking because it does not constitute a permanent invasion of the property and also does not deny the property owner of all economically beneficial use of a property. See Marlton Plaza, 426 N.J. Super. at 353. Importantly for purposes of this appeal, a property owner does not have an absolute right to access the State's highways and roads "from any particular point on his or her property." Id. at 355. Thus, a property owners' interest in a particular access point is not "property" for purposes of eminent domain. Ibid. Revocation of a driveway, therefore, so long as reasonable access remains, is not a taking and, therefore, is not compensable. Ibid.; see also State by Comm'r of Transp. v. Van Nortwick, 260 N.J. Super. 555, 558 (App. Div. 1992) (Where driveway access is "limited but remains reasonable," the property owner is not entitled to compensation; a property owner is not "entitled to compensation by virtue of inconvenience caused by the need to follow a more circuitous route.").

A-1958-18

Plaintiff further argues that by revoking her access to a public street, DOT has left her property landlocked. We disagree with that characterization. She has reasonable access to Route 206 via an easement over Town Center Drive. Accordingly, plaintiff's reliance on Lindel Realty Co. v. Miller, 2 N.J. Super. 204, 211–13 (Ch. Div. 1948), and Good Deal of Ivy Hill, Inc. v. City of Newark, 32 N.J. 263, 272 (1960), is misplaced. Those cases stand for the proposition that a property owner cannot be denied access to a public street. But plaintiff was not denied access because she was given reasonable alternative access in compliance with the Code.

Relatedly, plaintiff relies on Mueller v. N.J. Highway Auth., 59 N.J. Super. 583, 589–90 (App. Div. 1960), for the proposition that "a total denial of direct access to an abutting property is compensable." But again, there was no total denial of direct access because plaintiff was given reasonable alternative access. See also Van Nortwick, 260 N.J. Super. at 558 ("Although a diminution of access may cause other conditions on the property itself which may be compensable, as for example, . . . such things as a limitation of design options or on-site maneuverability, as long as the remaining access is reasonable, the diminution per se is not compensable.").

24

## VI.

We next address plaintiff's contentions that she was denied due process in the OAL hearing because the ALJ was biased, prevented her from introducing certain evidence, and did not permit her to cross-examine witnesses or to call certain witnesses, and because DOT's witnesses were not "independent." Most of plaintiff's specific contentions lack sufficient merit to warrant discussion. See R. 2:11-3(e)(1)(E). We nonetheless add the following comments with respect to plaintiff's contentions that the ALJ was biased and dishonest.

Rule 1:12-1(g) provides that a judge should not sit when there is a reason which might preclude a fair and unbiased hearing, or which might reasonably lead counsel or the parties to believe so. The standard for recusal is whether "a reasonable, fully informed person [would] have doubts about the judge's impartiality." State v. Dalal, 221 N.J. 601, 607 (2015) (quoting DeNike v. Cupo, 196 N.J. 502, 517 (2008)). Also, Canon 3 of the Code of Conduct for Administrative Law Judges requires ALJs to conduct a hearing with impartiality. N.J.A.C. 1:1 App.

Plaintiff claims that the ALJ was biased because he lied. For example, she contends that he stated the matter was expedited, then later denied saying so

and asserted that it was in fact not expedited. The full record belies plaintiff's allegation.

On February 2, 2016, the ALJ did in fact indicate that the matter would be expedited. However, on February 19, 2016, after plaintiff asserted she needed more time to gather evidence, the ALJ explained that the matter would not be expedited. On July 20, 2016, the ALJ further explained to plaintiff the case was "certainly not expedited by any means." The court continued, "[i]t's not expedited, it's not normal, it's starting to become delayed."

OAL hearings are meant to be expedited, if possible. See N.J.A.C. 1:1-14.2(a) ("Hearings and other proceedings shall proceed with all reasonable expedition . . . ."). N.J.A.C. 1:1-14.6(a) gives the ALJ the authority to determine whether a proceeding should be expedited. Importantly, an ALJ may convert a proceeding from expedited to non-expedited. N.J.A.C. 1:1-14.6(d); see also N.J.A.C. 1:1-14.6(f) ("The judge may establish special accelerated or decelerated schedules to meet the special needs of the parties or the particular case."). Finally, the ALJ "may take such other actions as are necessary for the proper, expeditious and fair conduct of the hearing." N.J.A.C. 1:1-14.6(p).

We resolutely reject plaintiff's allegation that the ALJ "lied." Even if he initially expected the matter to be expedited, he informed the parties that he had

26

changed that determination. We see nothing inappropriate, much less dishonest, in the manner in which the ALJ handled this sharply contested litigation.

We likewise reject plaintiff's argument that the ALJ conducted the hearing unfairly because she received expert reports only one day, and not five days, prior to the experts' testimony. The record indicates that plaintiff did not object. When a party has a reasonable opportunity to make an objection and fails to do so, that party is precluded from raising the issue on appeal unless the prohibition would result in plain error, i.e., error "clearly capable of producing an unjust result." R. 1:7-2.

The decision of whether to exclude an expert report that is submitted late is guided by whether there was (1) a design to mislead, (2) surprise, and (3) prejudice if the evidence is admitted. In re Commitment of G.D., 358 N.J. Super. 310, 315–16 (App. Div. 2003). The judge's ruling as to whether to permit a late submitted expert report is reviewed under an abuse of discretion standard and "must stand unless so wide of the mark that a manifest denial of justice resulted." Ratner v. Gen. Motors Corp., 241 N.J. Super. 197, 202 (App. Div. 1990). In this instance, the ALJ had no occasion to make findings regarding motive and prejudice because plaintiff did not object.

As part of plaintiff's overarching complaint that the DOT's decision and the ensuing litigation was tainted by bias and corrupt influence, plaintiff argues witnesses were not "independent" because they were employed by DOT. It is not disputed that expert witnesses Paul Ignarri, David Simmons, and Scott Parker had long-term relationships with DOT as employees and independent contractors. Plaintiff argues that those witnesses were thus biased in favor of DOT and therefore could not give independent opinions.

N.J.A.C. 1:1-15.9(b) provides:

> If a witness is testifying as an expert, testimony of that witness in the form of opinions or inferences is admissible if such testimony will assist the judge to understand the evidence or determine a fact in issue and the judge finds the opinions or inferences are:
>
> 1. Based on facts and data perceived by or made known to the witness at or before the hearing; and
>
> 2. Within the scope of the special knowledge, skill, experience or training possessed by the witness.

The administrative rules give an ALJ latitude in admitting evidence, so long as an expert's opinion is based on factual evidence. N.J.A.C. 1:1-15.9(b); see also State v. Townsend, 186 N.J. 473, 494 (2006) (explaining the net opinion rule precludes expert testimony that is not supported by factual evidence or other data or based merely on unfounded speculation). There is no categorical rule

28

that prohibits an ALJ from considering expert testimony from an employee or independent contractor of an agency. In this instance, the experts' specialized knowledge of DOT's methodologies assisted the ALJ to understand the evidence. Accordingly, the ALJ did not abuse its discretion, much less demonstrate bias, by admitting expert testimony from individuals who had employment relationships with DOT.

Plaintiff further alleges that the ALJ was biased because he refused to permit her to explore through discovery and cross-examination what she believes to be the true underlying basis for DOT's decision to the revoke access to her driveway access. Plaintiff contends, for example, the ALJ improperly prohibited her from presenting evidence with respect to an allegedly "bogus" contract with Lowe's or with respect to nine allegedly comparable properties where DOT did not revoke the owner's driveway access. Plaintiff argues that but for what she describes as a "sham" contract, DOT would not have taken any action against her.

As a general matter, an ALJ has wide discretion in controlling discovery and the presentation and admissibility of evidence. See N.J.A.C. 1:1-14.6. N.J.A.C. 1:1-14.6(k) authorizes an ALJ to limit the presentation of evidence. In addition, N.J.A.C. 1:1-14.6(m) permits the judge to make rulings necessary to

A-1958-18

prevent irrelevant questioning and to expedite cross-examination. N.J.A.C. 1:1-14.6(p) permits the ALJ to take actions necessary for the "proper, expeditious and fair conduct of the hearing."

Plaintiff argues the testimony of Ignarri and Richard Dube contradicted their answers to the second set of interrogatories, but the ALJ did not permit her to fully question them about these contradictions. Ignarri and Dube stated in their answers to the second set of interrogatories that they only began the revocation process upon learning plaintiff was contesting the agreement with Lowe's. According to plaintiff, the contract Lowe's showed DOT was not the agreement she signed.

The ALJ was authorized to conduct the hearing in such a way as to ensure that only relevant evidence was presented. The ALJ in fact permitted plaintiff to question Ignarri, who stated the agreement between plaintiff and Lowe's had no bearing on DOT's decision to revoke her driveway access notwithstanding his answers to interrogatories. The ALJ explained to plaintiff that this line of questioning was irrelevant to the question of whether DOT properly closed plaintiff's driveway. We see no abuse of discretion much less bias. Even accepting for the sake of argument that DOT was alerted to plaintiff's driveway because it became aware that plaintiff was contesting the agreement, we are

satisfied that the decision to revoke her driveway access was ultimately based upon safety violations. We agree with the ALJ that any dispute between plaintiff and Lowe's concerning their agreement regarding the installation and maintenance of Town Center Drive is not relevant to whether plaintiff's original driveway suffered from safety violations and thus whether the revocation of her use of that driveway was appropriate in accordance with the governing statute and regulations.[3]

To the extent we have not addressed them, any remaining arguments raised by plaintiff lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] As explained in our opinion in the related appeal, there is no dispute that the agreement between defendant and Lowe's contemplated the removal of plaintiff's original driveway.

A-1958-18