**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3108-23

DEPARTMENT OF
COMMUNITY AFFAIRS,
BUREAU OF HOUSING
INSPECTION,

     Petitioner-Respondent,

v.

FRANK BRIGHT,

     Respondent-Appellant.

_____

     Argued November 12, 2025 – Decided November 21, 2025

     Before Judges Susswein, Chase and Augostini.

     On appeal from the New Jersey Department of Community Affairs, Docket No. 200646/1214010986.

     Frank Bright, appellant, argued the cause on appellant's behalf.

     Charles A. Shadle, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Charles A. Shadle, on the brief).

PER CURIAM

Frank Bright appeals an April 24, 2024 final agency decision of the Department of Community Affairs ("DCA"), which upheld a Notice of Statutory Violation and Order to Pay Penalty issued by the Bureau of Housing Inspection ("Bureau"). We affirm.

I.

The subject property is a multiple dwelling property located on George Street in New Brunswick and is registered by Bright with the Bureau under the Hotel and Multiple Dwelling Law ("HMDL"), N.J.S.A. 55:13A-1 to -31.

On July 19, 2019, the Bureau inspected the property and issued an Inspection Report and Orders of the Commissioner, citing nineteen violations. However, no fines were issued. This report advised Bright that a reinspection would take place after sixty days and that he could request an extension of time to abate or contest the violations. He did not contest the report or seek an extension.

When the Bureau reinspected the property on November 10, 2022, it determined that, of the nineteen violations previously cited, eight violations remained unabated, five violations were undetermined, and six had been abated. Consequently, the Bureau issued a Commissioner's Notice of Statutory

Violation and Order to Pay Penalty of $525. Bright promptly filed an administrative appeal and the matter was transferred to the Office of Administrative Law for a hearing by an Administrative Law Judge ("ALJ").

The hearing commenced in August 2023. The Bureau provided testimony from Inspector Sean Daly and Senior Inspector Neil Costanzo. Bright cross-examined these witnesses but chose not to testify himself or to present other witnesses. The Bureau submitted several exhibits, including photographs documenting the violations; Bright offered a single exhibit—an April 2023 email with attachments.

The ALJ found the Bureau's witnesses to be credible and determined the eight violations remained unabated as of November 2022. The ALJ concluded there were no mitigating or aggravating circumstances and found the penalties assessed by the Bureau complied with N.J.A.C. 5:10-1.17. The ALJ affirmed the $525 penalty and ordered that Bright abate the interior violations within thirty-days and the exterior violations within sixty-days of the decision.

Bright submitted exceptions to the ALJ's initial decision. On April 24, DCA issued its final agency decision adopting the ALJ's findings. This appeal followed.

3

## II.

We begin our analysis by acknowledging the legal principles that govern this appeal. Our review of an agency's final decision is limited. Hayes v. Bd. of Trs., Police & Firemen's Ret. Sys., 421 N.J. Super. 43, 51 (App. Div. 2011). Our function is to review "agency decisions under an arbitrary and capricious standard." Zimmerman v. Sussex Cnty. Educ. Servs. Com'n, 237 N.J. 465, 475 (2019). We will uphold an agency's determination "'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). In determining whether the agency's decision is arbitrary, capricious, or unreasonable, we must examine:

> (1) whether the agency's decision offends the State or Federal Constitution;
> (2) whether the agency's action violates express or implied legislative policies;
> (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and
> (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

4

A-3108-23

[In re Taylor, 158 N.J. 644, 656 (1999) (quoting Brady v. Bd. of Rev., 152 N.J. 197, 210-11 (1997)).]

We examine whether the findings of the agency could have been reached on the credible evidence in the record, considering the proofs as a whole. Close v. Kordulak Bros., 44 N.J. 589, 598-99 (1965). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006) (citing McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)). In reviewing an agency's decision, we "must be mindful of, and deferential to, the agency's 'expertise and superior knowledge of a particular field[,]'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)), and "'may not substitute [our] own judgment for the agency's,'" In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)). We defer to an agency's interpretation of its own regulations and applicable statutes. In re M.M., 463 N.J. Super. 128, 137-38 (App. Div. 2020).

III.

Before considering petitioner's substantive arguments, it is important to review the HMDL. The purpose of the HMDL is to "protect[ ] . . . the health

5

and welfare of the residents of this State in order to assure the provision therefor of decent, standard and safe units of dwelling space." N.J.S.A. 55:13A-2. In enacting the HMDL, the Legislature intended to provide "stronger and more detailed measures . . . for the protection of tenants." Trentacost v. Brussel, 82 N.J. 214, 230 (1980). The HMDL is liberally construed and grants broad authority to the Department to regulate hotels and multiple dwellings throughout New Jersey. Rothman v. Dep't of Cmty. Affairs, 226 N.J. Super. 229, 231-32 (App. Div. 1988) (citing N.J.S.A. 55:13A-2).

The HMDL expressly grants to the Department's Commissioner "all the powers necessary and appropriate to carry out and execute the purposes of [the HMDL]." N.J.S.A. 55:13A-6. Those powers include the Department's authority to protect occupants of hotels and multiple dwellings with respect to the issuance, suspension, or revocation of HMDL licenses. Ibid.; see also N.J.A.C. 5:10-1B.1. To achieve those goals, the HMDL empowers the Department to promulgate regulations "deem[ed] necessary to assure that any hotel or multiple dwelling will be maintained in such manner as is consistent with, and will protect, the health, safety, and welfare of the occupants or intended occupants thereof, or of the public generally." N.J.S.A. 55:13A-7. Further, DCA Bureau inspectors are authorized to "enter upon and examine and inspect at all

reasonable times any building, enclosure, or premises, or any part thereof . . . for the purpose of determining compliance with" the HMDL and its implementing regulations. N.J.A.C. 5:10-1.10(a); see also N.J.S.A. 55:13A-6(b) (authorizing the DCA "[t]o enter and inspect, without prior notice, any hotel or multiple dwelling . . . and to make such investigation as is reasonably necessary"). The Department's Commissioner has the power to carry out the purposes of the HMDL pertaining to assessing penalties. In particular, under N.J.S.A. 55:13A-6(g), the Department's Commissioner may "assess penalties and to compromise and settle any claim for a penalty for any violation . . . in such amount in the discretion of the commissioner as may appear appropriate and equitable under all of the circumstances of said violation."

IV.

On appeal, petitioner's main contention is that, for a variety of reasons, he was not afforded due process. We are not persuaded.

The Due Process Clause of the Fourteenth Amendment provides that a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. The concept of "procedural due process" places "constraints on governmental decisions which deprive

7

individuals of 'liberty' or 'property' interests within the meaning of" this clause. Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

The United States Supreme Court has held that "some form of hearing is required before an individual is finally deprived of a property interest." Id. at 333. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Ibid. (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). However, beyond this basic obligation, "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). "[N]ot all situations calling for procedural safeguards call for the same kind of procedure." Ibid.

First, Bright asserts material witnesses who conducted inspections and had direct knowledge of the alleged violations were not produced at trial, depriving him of the opportunity to confront and cross-examine them. He also objects to the lack of photographic evidence for some of the violations. These arguments are without merit. The Bureau had the burden of proving the violations by a preponderance of the evidence. Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169 (2006). How it meets its evidentiary burden is properly left to the Bureau's discretion. Bright's due process rights were not violated by how

the Bureau's decided to present its case. Moreover, Bright had the opportunity to call any witness or present any photographs that he deemed necessary to rebut the Bureau's proofs.

Next, Bright argues that Inspector Daly was never on location despite his testimony that he inspected the property on November 10, 2022. We must "give due regard to [an] agency's credibility findings." Ardan v. Bd. of Rev., 444 N.J. Super. 576, 584 (App. Div. 2016); see also Parsells v. Bd. of Educ. of Borough of Somerville, Somerset County, 254 N.J. 152, 159 (2023). We will "not disturb the factual findings . . . unless we are convinced that they are so manifestly unsupported by[,] or inconsistent with[,] the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (fourth alteration in original) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). Additionally, we defer to credibility determinations because the judge "'hears the case, sees and observes the witnesses, and hears them testify,' affording [the judge] 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). The ALJ determined that Daly was a credible witness and was present at the inspection. The ALJ's determination is supported by

sufficient evidence in the record.

We next address Bright's contention that it was improper for Costanzo to visit the Property weeks before trial to take photographs and to familiarize himself with the case in anticipation of his hearing testimony. Here, no additional violations were issued as a result of Costanzo's visit. Moreover, Bright's claim that the photographs taken were "being used to backdate alleged violations from years prior" is belied by the record.

With respect to Bright's contention regarding discovery, we see no impropriety by DCA having provided "packets of information" to the ALJ prior to the hearing. Nor are we persuaded that petitioner is entitled to a new hearing or other relief on the grounds that discovery was not provided to him in a timely manner. Bright waived these assertions when discussing DCA's exhibits; the ALJ asked him, "do you have any objection to any of these [e]xhibits?" Bright answered, "[n]o, no [be]cause it actually worked out in my favor." As such, we see no reason for our intervention.

Bright also contends that the ALJ improperly conducted a private investigation to determine who owned the property. The New Brunswick Tax Assessors Office was the source of the information concerning ownership of the Property. Under N.J.A.C. 1:1-15.2(a), an ALJ may take official notice of

judicially noticeable facts consistent with N.J.R.E. 201. N.J.R.E. 201(b)(3) provides that a court may judicially notice "specific facts and propositions of generalized knowledge which are capable of immediate determination by resort to sources whose accuracy cannot reasonably be questioned." We are satisfied that the information kept by the Tax Assessor's Office was reliable. Moreover, Bright admitted the property was his in the April 2023 emails that he admitted into evidence. In one of those emails Bright told Daly that he was "not welcomed not invited to enter my property at 218 George Street, New Brunswick, New Jersey 08901."

Bright also contends the ALJ violated his Fifth Amendment rights by compelling him, a self-represented litigant, to testify in order to enter documents into the record. The Fifth Amendment provides in pertinent part, "[n]o person shall be . . . compelled in any criminal case to be a witness against [themselves]." U.S. Const. amend. V. Under New Jersey law, the privilege is codified at N.J.S.A. 2A:84A-19. That privilege extends to administrative proceedings, N.J.A.C. 1:1-15.4; see State, Dep't of Law & Pub. Safety, Div. of Gaming Enf't v. Merlino, 216 N.J. Super. 579, 587 (App. Div. 1987). However, "[p]rotection against self-incrimination 'applies only when the accused is compelled to make a testimonial communication that is incriminating.'" Borough of Franklin v.

Smith, 466 N.J. Super. 487, 499 (App. Div. 2021) (quoting Fisher v. United States, 425 U.S. 391, 408 (1976)). N.J.R.E. 502 makes clear, moreover, that a "matter will not be held to incriminate if it clearly appears that the witness has no reasonable cause to apprehend criminal prosecution."

Nothing in the administrative matter before us suggests that Bright reasonably apprehended that his answer would expose him to criminal prosecution. And in any event, the record shows, despite Bright's contention, the ALJ did not compel him to answer, considering that when he refused, the ALJ simply proceeded with the hearing. Consequently, there was no violation of Bright's right against self-incrimination.

Finally, we only briefly address Bright's contention that the ALJ erred by not sequestering the witnesses. Bright's reliance on N.J.R.E. 615 is misplaced. That rule states, "[a]t the request of a party or on the court's own motion, the court may, in accordance with law, enter an order sequestering the witnesses." N.J.R.E. 615. Our review of the record shows that Bright never requested that witnesses be sequestered. In any event, N.J.A.C. 1:1-15.1(c) makes clear that "[p]arties in contested cases shall not be bound by statutory or common law rules of evidence or any formally adopted in the New Jersey Rules except as specifically provided in these rules." Under N.J.A.C. 1:1-15.8, witnesses are

12

not required to be sequestered.

After a thorough review of the record, we are satisfied the final agency decision is supported by credible evidence, and the assessment of penalties was lawful and appropriate. Any remaining arguments raised by petitioner do not require further discussion, as they lack sufficient merit. R. 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division